# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE J. PADILLA-PADILLA;
GUADALUPE D. PADILLA-ENRIQUEZ;
ADELA ENRIQUEZ,

*Petitioners,*

v.

ALBERTO R. GONZALES, Attorney
General,

*Respondent.*

Nos. 02-73627
03-73964

Agency Nos.
A75-301-560
A75-301-561
A75-301-562

OPINION

On Petitions for Review from Orders of the
Board of Immigration Appeals

Argued and Submitted
January 10, 2006—San Francisco, California

Filed September 13, 2006

Before: A. Wallace Tashima, William A. Fletcher, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge William A. Fletcher

11257

**COUNSEL**

Marc Van Der Hout, San Francisco, California, for the peti-
tioners.

David V. Bernal and Ernesto H. Molina, US Deptartment of
Justice, Washington, D.C., for the respondent.

**OPINION**

W. FLETCHER, Circuit Judge:

Based on advice of counsel, the Padillas filed an applica-
tion for asylum shortly before the effective date of the Illegal
Immigration Reform and Immigrant Responsibility Act of
1996 ("IIRIRA" or "Act"). After the Act's effective date, the
former Immigration and Naturalization Service ("INS")[1] initi-
ated removal proceedings against them. Because these pro-
ceedings were initiated after the Act's effective date, a ten-
year period of continuous presence in the United States was
required to qualify for relief from removal rather than the
seven-year period that had previously been required to qualify
for relief from deportation. The Padillas could not satisfy the
ten-year period.

The immigration judge ("IJ") denied the Padillas' applica-
tion for asylum, and granted them a period of 60 days within
which to depart voluntarily, after which an order of removal
would be entered if they had not departed. In a "streamlined"
order, the Board of Immigration Appeals ("BIA") affirmed
the decision of the IJ, but reduced the voluntary departure

[1]The INS was abolished by the Homeland Security Act of 2002, Pub.
L. No. 107-296, 116 Stat. 2135, and the majority of its immigration
enforcement functions were transferred to the Bureau of Immigration and
Customs Enforcement, a part of the Department of Homeland Security.
*See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

period to 30 days. The Padillas moved to reopen before the BIA based on ineffective assistance of counsel. The BIA denied the motion.

We have two consolidated petitions for review before us. In No. 02-73627, the Padillas petition for review of the BIA's streamlined decision. In No. 03-73964, the Padillas petition for review of the BIA's denial of their motion to reopen.

We grant the petition for review in No. 02-73627 and remand for further proceedings with respect to voluntary departure. We deny the petition for review in No. 03-73964.

## I.   Background

Petitioners Jose Juan Padilla-Padilla, Adela Enriquez, and Guadalupe D. Padilla-Enriquez ("the Padillas") are a father, mother, and daughter respectively. They entered the United States without inspection in March 1989. The Padillas have two United States citizen sons (and brothers), Jose and Alejandro Padilla-Enriquez, who were born in the United States. Their ages are 16 and 14 respectively.

On advice of their counsel, Walter Pineda, the Padillas filed an application for asylum on January 30, 1997. The effective date of IIRIRA was approximately two months later, on April 1, 1997. The INS denied the Padillas' asylum application on April 20, 1998. The next day, the INS initiated removal proceedings under IIRIRA by serving a notice to appear ("NTA"). The NTA charged the Padillas as removable pursuant to the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for being aliens present in the United States without having been admitted or paroled. On October 7, 1998, the Padillas conceded removability before an IJ and renewed their application for asylum.

On January 7, 1999, the Padillas moved to terminate removal proceedings, arguing that they should be in deporta-

tion proceedings instead. Prior to IIRIRA, aliens were placed in either deportation proceedings or exclusion proceedings. IIRIRA combined these two proceedings into a single proceeding, now called removal. *See Vasquez-Zavala v. Ashcroft*, 324 F.3d 1105, 1107 (9th Cir. 2003). Aliens placed in deportation proceedings under pre-IIRIRA law could seek relief from deportation through a request for suspension of deportation. *See id.*; *see also* INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (repealed 1997). Suspension of deportation was available to aliens who: (1) were not being deported for certain enumerated offenses; (2) had been present for a continuous period of seven years; (3) were of good moral character during that period; and (4) the deportation of whom would result in "extreme hardship" to certain enumerated parties. *Id.* Had the Padillas been placed in deportation proceedings prior to the effective date of IIRIRA, they almost certainly would have been able to satisfy the requirement of seven years' continuous presence.

IIRIRA replaced suspension of deportation with cancellation of removal. The requirements for cancellation of removal under IIRIRA are more stringent than the prior requirements for suspension of deportation. Cancellation of removal is available to aliens who: (1) have been present for a continuous period of at least ten years; (2) have had good moral character during that period; (3) have not been convicted of certain enumerated offenses; and (4) the removal of whom would result in "exceptional and extremely unusual hardship" to certain enumerated parties. INA § 240A(b), 8 U.S.C. § 1229b(b). The Padillas were not eligible for cancellation of removal because they had not been present for a continuous period of at least ten years when the NTA was served on April 21, 1998. *See* 8 U.S.C. § 1229b(b)(1)(A), (d)(1); *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 597 (9th Cir. 2002).

The IJ denied the Padillas' motion to terminate removal proceedings. The IJ subsequently denied the Padillas' application for asylum and granted them a 60-day period of voluntary

departure pursuant to INA § 240B, 8 U.S.C. § 1229c. If the Padillas did not voluntarily depart within that period, an order of removal would be entered automatically. Pursuant to its "streamlining" authority, 8 C.F.R. § 1003.1(e)(4),**²** the Board affirmed the substance of the IJ's order on September 30, 2002. However, the Board also added a "further order" reducing the voluntary departure period from 60 to 30 days.

## II.    Standard of Review

When the BIA streamlines, we review the substance of the IJ's decision. *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 855 (9th Cir. 2003) (as amended). We review purely legal claims de novo. *See De Martinez v. Ashcroft*, 374 F.3d 759, 761 (9th Cir. 2004) (as amended).

## III.    Petition No. 03-73964

We first address the BIA's denial of the Padillas' motion to reopen based on ineffective assistance of counsel. Based on the advice of their counsel, Walter Pineda, the Padillas filed an application for asylum approximately two months before the effective date of IIRIRA. Competent counsel would have

---

**²**When the BIA issued its opinion the applicable regulation was 8 C.F.R. § 3.1(a)(7) (2002). Section 3.1(a)(7) later became 8 C.F.R. § 1003.1(a)(7) (2003). *See* 68 Fed. Reg. 9824 (Feb. 28, 2003). Another, virtually identical regulation was also adopted. *See* 8 C.F.R. § 3.1(e)(4) (2002). This regulation later became 8 C.F.R. § 1003.1(e)(4). *See* 68 Fed. Reg. 9824 (Feb. 28, 2003). In 2003, in recognition that § 1003.1(a)(7) and § 1003.1(e)(4) were duplicative, § 1003.1(a)(7) was replaced by § 1003.1(e)(4). Definitions; Fees; Powers and Authority of DHS Officers and Employees in Removal Proceedings, 69 Fed. Reg. 44903-01, 44904 (Interim Rule July 28, 2004). The current version of the regulation appears at 8 C.F.R. § 1003.1(e)(4) (2004). *Lanza v. Ashcroft*, 389 F.3d 917, 925 (9th Cir. 2004). The provision of the regulation at issue in this case, 8 C.F.R. § 3.1(a)(7)(iii), is identical to 8 C.F.R. § 1003.1(e)(4)(ii). Because there are no differences affecting this appeal between the former and current versions, we cite to the current regulation throughout the opinion. *See Barroso v. Gonzales*, 429 F.3d 1195, 1201 n.10 (9th Cir. 2005).

known that this was a very risky thing for the Padillas to do. The strategy was to file an application for asylum that would almost certainly be denied, and then to seek relief from the deportation order that would follow. The obvious problem with this strategy was that deportation — and suspension of deportation — were available only under pre-IIRIRA law. *See Jimenez-Angeles*, 291 F.3d at 597. In order to qualify for deportation and suspension of deportation, the deportation proceedings had to be initiated before the effective date of IIRIRA, which was only two months after the Padillas filed their asylum application. *Id.* To say the least, it was highly unlikely that the INS would initiate deportation proceedings within the requisite period.

Predictably, the INS never initiated deportation proceedings. Instead, more than a year after the effective date of IIRIRA, it initiated removal proceedings. As discussed above, eligibility for cancellation of removal requires ten years of continuous presence in the United States, rather than the seven years that had been required for eligibility for suspension of deportation under pre-IIRIRA law. *See* 8 U.S.C. § 1229b(b)(1)(A). The Padillas could not satisfy the ten-year requirement of § 1229b(b)(1)(A) and were therefore ineligible for cancellation of removal.

**[1]** Mr. Pineda is well known to us and to others. He is currently charged, in a separate proceeding before The State Bar of California, with twenty-nine counts of incompetence in representing clients and five counts of moral turpitude.[3] Unfortunately for the Padillas, our case law precludes relief in this proceeding. In *Lara-Torres v. Ashcroft*, 383 F.3d 968

---

[3]*See* Gary Rivlin, *Dollars and Dreams: Immigrants, as Prey*, N.Y. Times, June 11, 2006 § 3 at 4; Eliza Strickland, *The Asylum Trap, Unscrupulous attorneys prey on immigrants seeking green cards with an expensive and fruitless legal scheme. Now 29 Mexicans have joined the disbarment case against one such lawyer*, San Francisco Weekly, May 10, 2006, *available at* http://www.sfweekly.com/Issues/2006-05-10/news/featur e.html.

(9th Cir. 2004), *amended by* 404 F.3d 1105 (9th Cir. 2005), Mr. Pineda gave the same advice he gave to the Padillas to other aliens, with precisely the same result as in this case. We held in *Lara-Torres* that there was no violation of due process. *Id.* at 976. Because we are bound to follow *Lara-Torres*, we deny petition No. 03-73964.

## IV.   Petition No. 02-73627

We next address the BIA's streamlined affirmance of the IJ's order of removal and its reduction of the period of voluntary departure from 60 to 30 days.

## A.   Jurisdiction

[2] The government argues on three grounds that we lack jurisdiction. It argues, first, that we have no jurisdiction to review the BIA's discretionary decision to reduce the period of voluntary departure. *See* INA § 242(a)(2)(B), 8 U.S.C. § 1252(a)(2)(B),[4] and INA § 240B(f), 8 U.S.C. § 1229c(f).[5] The government acknowledges that we have jurisdiction to review legal and constitutional issues, but argues that the Padillas challenge an exercise of unreviewable discretionary authority. *See* 8 U.S.C. § 1252(a)(2)(D) ("Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitu-

---

[4]In pertinent part 8 U.S.C. § 1252(a)(2)(B) provides:

Notwithstanding any other provision of law (statutory or nonstatutory), . . . and except as provided in subparagraph (D) . . . no court shall have jurisdiction to review—

(i) any judgment regarding the granting of relief under section . . . 1229c . . . of this title.

[5]In pertinent part 8 U.S.C. § 1229c(f) provides:

No court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure under subsection (b) of this section.

tional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section."); *Notash v. Gonzales*, 427 F.3d 693, 695-96 (9th Cir. 2005). We disagree. The Padillas do not challenge the manner in which discretionary authority is exercised. *See Molina-Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir. 2002) (as amended). Rather, they challenge the existence of the authority. They contend that when affirming in a streamlined order, the BIA does not have the authority to change any aspect of the IJ's decision, including the length of a voluntary departure period. We have jurisdiction to decide this question. *See Zolotukhin v. Gonzales*, 417 F.3d 1073, 1075 n.2 (9th Cir. 2005).

**[3]** The government argues, second, that we have no jurisdiction because the Padillas failed to exhaust their administrative remedies before the BIA. We may entertain a petition for review only if "the alien has exhausted all administrative remedies available as of right." 8 U.S.C. § 1252(d)(1). We have interpreted the term "as of right" to require "an alien to exhaust his or her claims by raising them on *direct appeal* to the BIA." *Alcaraz v. INS*, 384 F.3d 1150, 1158 (9th Cir. 2004) (emphasis in original). The Padillas assert the following three claims, none of which was argued to the BIA.

**[4]** The Padillas' first claim is a violation of constitutional due process. They point out that the practical effect of the removal provisions of IIRIRA is that some families are split up when alien members of the family are removed and citizen members are permitted to stay. They point out that the hardship thus imposed on aliens who have been in the country for less than ten years is categorically irrelevant to the removal decision. They contend that this categorical refusal to consider hardship imposed violates due process. In order to provide the relief requested by the Padillas, the BIA would have to find either the ten-year requirement of § 1229b(b)(1)(A) or the "stop-time" rule of § 1229b(d)(1) unconstitutional. The BIA does not have jurisdiction to determine the constitution-

ality of the statutes it administers. *Liu v. Waters*, 55 F.3d 421, 425 (9th Cir. 1995). Because the BIA could not have addressed the Padillas' constitutional due process claim, the Padillas were not required to exhaust the issue before the BIA. *Id.* at 426; *Garcia-Ramirez v. Gonzales*, 423 F.3d 935, 938 (9th Cir. 2005).

[5] The Padillas' second claim is that these same provisions violate international law. In *In re Medina*, 19 I. & N. Dec. 734, 742, 746 (BIA 1988), the BIA held that it did not have jurisdiction to consider international law claims premised on treaty or customary international law. We have agreed with the BIA's conclusion that it lacks jurisdiction over claims arising under international law. *See Galo-Garcia v. INS*, 86 F.3d 916, 918 (9th Cir. 1996) (holding that the BIA does not have jurisdiction over customary international law claims); *see also Bradvica v. INS*, 128 F.3d 1009, 1014 (7th Cir. 1997) (same); *cf. Beharry v. Ashcroft*, 329 F.3d 51, 59 (2d Cir. 2003). Since the BIA did not have jurisdiction to consider this claim, the Padillas were not required to exhaust it.

[6] The Padillas' third claim is that the BIA acted improperly in reducing the period of voluntary departure from 60 to 30 days in a streamlined case. "We do not require an alien to exhaust administrative remedies on legal issues based on events that occurred *after* briefing to the BIA has been completed." *Alcaraz*, 384 F.3d at 1158 (emphasis in original); *see Castillo-Villagra v. INS*, 972 F.2d 1017, 1023-24 (9th Cir. 1992). The Padillas challenge the "further order" contained in the BIA's streamlined affirmance of the IJ's decision. This order was issued after briefing. We do not believe that the Padillas should have been required to anticipate this ruling in their briefing. At the time of its decision in the Padillas' case, the BIA was still following *Matter of Chouliaris*, 16 I. & N. Dec. 168 (BIA 1977), under which a voluntary departure period of more than 30 days was reduced to 30 days if the period had run during the pendency of the appeal to the BIA.[6]

---

[6]*Matter of Chouliaris* was decided under the voluntary departure scheme that existed under pre-IIRIRA law. In *In re A- M-*, 23 I. & N. Dec.

But petitioners are not arguing before us that the BIA does not have the authority to reduce the period to 30 days under *Matter of Chouliaris*. Rather, they are arguing that the BIA does not have the authority to reduce the period *in a streamlined affirmance*. We are unwilling to hold that the petitioners should have anticipated in their briefing to the BIA that the agency would violate its own streamlining regulation.

[7] The government argues, third, that the Padillas should have filed a motion to reconsider[7] in the BIA before filing a petition for review in this court. Whether to grant a motion to reconsider is within the discretion of the BIA. *See* 8 C.F.R. § 1003.2(b); INA § 240(c)(5), 8 U.S.C. § 1229a(c)(5); *Noriega-Lopez*, 335 F.3d at 881. The failure to request such discretionary relief does not deprive us of jurisdiction.

---

737, 743 (BIA 2005), the BIA changed its practice, pointing out that its decision in *Chouliaris* had been based on the fact that an IJ acting under pre-IIRIRA law was permitted to grant voluntary departure periods of any length. Under IIRIRA, by contrast, an IJ can grant a voluntary departure period of no longer than 60 days. The BIA held in *In re A- M-* that, in light of IIRIRA, it would no longer automatically reduce voluntary departure periods to 30 days. Instead, it would reinstate any period of voluntary departure granted by the IJ "unless there are reasons in a particular case for reducing the period of voluntary departure initially granted." *Id.* at 744. The Padillas' case was decided after the effective date of IIRIRA (and thus after the reason for the *Chouliaris* rule had disappeared), but before the BIA's decision in *In re A- M-*.

[7]The government argues in its brief that the Padillas should have sought a motion to reopen, but it likely meant to argue that they should have sought a motion to reconsider. A motion to reopen is appropriate where "new facts" are presented, and must be made within 90 days of the final agency determination. 8 C.F.R. § 1003.2(c). A motion to reconsider is appropriate for "errors of fact or law" relating to the prior Board's decision, and must be made within 30 days after the mailing of the Board's decision. 8 C.F.R. § 1003.2(b). Because no "new facts" arose after the Board's decision, the only form of discretionary review for which the Padillas would have been eligible is a motion to reconsider. *See Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 880-81 (9th Cir. 2003); *Iturribarria v. INS*, 321 F.3d 889, 895-96 (9th Cir. 2003).

*Alcaraz*, 384 F.3d at 1160; *see Sun v. Ashcroft*, 370 F.3d 932, 942 (9th Cir. 2004).

**[8]** Finally, we note that we may prudentially require petitioners to exhaust administrative remedies in order to develop a proper record, prevent deliberate bypass of the administrative scheme, or allow the agency to correct its own mistake. *See Alcaraz*, 384 F.3d at 1160; *see also Noriega-Lopez*, 335 F.3d at 881. Apart from allowing the BIA to correct its own mistake, the other factors do not weigh in favor of requiring the Padillas to exhaust. The record is complete, as the only issues the Padillas raise are legal, and the Padillas do not appear to be trying to bypass the administrative scheme. *See Huang v. Ashcroft*, 390 F.3d 1118, 1123 (9th Cir. 2005) (as amended). Furthermore, a motion to reconsider before the BIA would now be untimely. *See* 8 C.F.R. § 1003.2(b). Under these circumstances, we will not require prudential exhaustion. *See Alcaraz*, 384 F.3d at 1160.

## B.   Due Process

The Padillas contend that the practical effect of removal is that some families are split up, with the removed members of the family returning to their country and the non-removed members staying in the United States. They contend that the importance of family unity is such that the combined effect of the ten-year requirement for eligibility for cancellation of removal in § 1229b(b)(1)(A) and the stop-time rule of § 1229b(d)(1) (initiation of removal proceeding by service of NTA stops accrual of time) violates constitutional substantive due process.

**[9]** The Supreme Court has stated that " 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (citing *Oceanic Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)). The Court went on to note that "[o]ur cases 'have long recognized the power to

expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.' " *Id.* at 792 (citing *Shaughnessy v. Mezei*, 345 U.S. 206, 210 (1953)). The Court held that so long as Congress legislates with "a 'facially legitimate and bona fide reason' the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification . . . ." *Id.* at 794-95 (citing *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972)).

**[10]** Congress has provided for individualized hearings before an IJ to determine hardship on family members resulting from removal for cases satisfying the eligibility criteria for cancellation of removal. *See* 8 U.S.C. § 1229b(b). Congress has also specifically provided that cancellation cannot be granted unless the alien has been continuously present in the United States for at least ten years. 8 U.S.C. § 1229b(b)(1)(A). We have broadly upheld time presence requirements. *See Urbano de Malalaun v. INS*, 577 F.2d 589, 594 (9th Cir. 1978). The Padillas claim that because the "right" to remain with "immediate family . . . ranks high among the interests of the individual," they have the right to an individual determination of hardship. *Landon v. Plasencia*, 459 U.S. 21, 34 (1982); *see also Moore v. City of East Cleveland*, 431 U.S. 494, 499-500 (1977). The Padillas point out that although the stop-time rule of § 1229b(d)(1) has stopped the accrual of time for purposes of the ten-year requirement as of the date of service of the NTA on April 21, 1998, they have now been present in the United States for over seventeen years. They contend that in this circumstance they are constitutionally entitled to have their hardship considered as part of the decision whether they should be removed.

So long as Congress has a "facially legitimate and bona fide" reason for the lines it has drawn, the judiciary will not interfere. *See Fiallo*, 430 U.S. at 794. The legislative history of IIRIRA shows that one of its purposes was to expedite the removal of aliens. *See* S. Rep. No. 104-249, at 7 (1996)

("Aliens who violate U.S. immigration law should be removed from this country as soon as possible."). Under pre-IIRIRA law, aliens continued to accrue time toward the satisfaction of the then-applicable seven-year requirement even after the initiation of deportation proceedings. The accrual of time stopped only when they applied for suspension of deportation. *Ram v. INS*, 243 F.3d 510, 513 (9th Cir. 2001). Aliens thus had a substantial incentive to delay proceedings, and to delay applying for suspension of deportation, in order to satisfy the seven-year requirement. The stop-time provision of § 1229b(d)(1), adopted as part of IIRIRA, removes this incentive by stopping the accrual of time upon the service of an NTA.

**[11]** The combination of Congress' authority to specify a period of time before an alien becomes eligible for cancellation of removal, and its rationale for adopting the stop-time rule contained in § 1229b(d)(1), is enough to satisfy the due process clause.

## C.   International Law

**[12]** The Padillas also contend that the combined practical effect of the ten-year requirement and the stop-time rule on family unity violates international law. The Padillas point to various treaties, declarations, and customary international law norms which generally recognize rights of families. But they are unable to point to any binding obligation under international law that has been violated. *See*, *e.g.*, *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734-35 (2004) (stating that the Universal Declaration of Human Rights and the International Covenant on Civil and Political Rights do not impose obligations on the United States because neither is self-executing); *see also Cabrera-Alvarez v. Gonzales*, 423 F.3d 1006, 1011-13 (9th Cir. 2005) (holding that the hardship standard of 8 U.S.C. § 1229b(b)(1)(D) as interpreted by the BIA does not violate customary international law). The government, on the other hand, points to the statutory framework that clearly pro-

vides that in order to be eligible for cancellation from removal, an immigrant must have been continuously present in the United States for a period of ten years prior to the service of an NTA. 8 U.S.C. § 1229b(b)(1)(A), (d)(1).

We therefore conclude that the government has not violated any binding obligation under international law by failing to consider the hardship imposed on the Padillas in making its removal decision.

### D. Reduction of Voluntary Departure Period

Finally, the Padillas contend that the BIA did not have the authority, in a "streamlined" affirmance, to reduce the voluntary departure period granted by the IJ from 60 to 30 days. The IJ granted the Padillas voluntary departure for a 60-day period. The BIA then affirmed without opinion in a streamlined decision pursuant to 8 C.F.R. § 1003.1(e)(4). However, the BIA did not affirm the entirety of the IJ's decision. As part of its affirmance, the BIA issued what it called a "further order" reducing the period of voluntary departure from 60 to 30 days.

The full BIA order is as follows:

ORDER:

PER CURIAM. The Board affirms, without opinion, the results of the decision below. The decision below is, therefore, the final agency determination. *See* 8 C.F.R. § 3.1(a)(7).

FURTHER ORDER: Pursuant to the Immigration Judge's order and conditioned upon compliance with conditions set forth by the Immigration Judge and the statute, the alien is permitted to voluntarily depart from the United States, without expense to the Government, within 30 days from the date of this

order or any extension beyond that time as may be granted by the district director. *See* section 240B(b) of the Immigration and Nationality Act; 8 C.F.R. § 240.26(c), (f). In the event the alien fails to so depart, the alien shall be removed as provided in the Immigration Judge's order.

NOTICE: If the alien fails to depart the United States within the time period specified, or any extensions granted by the district director, the alien shall be subject to civil penalty of not less than $1,000 and not more than $5,000, and shall be ineligible for a period of 10 years for any further relief under section 240B and sections 240A, 245, 248, and 249 of the Immigration and Nationality Act. *See* section 240B(d) of the Act.

**[13]** We defer to an agency's interpretation of its own regulations. *Salehpour*, 761 F.2d at 1445. However, where that interpretation is "plainly erroneous or inconsistent with the regulation[ ]" we will not so defer. *Id.* The BIA must follow its own regulations. *Ramon-Sepulveda v. INS*, 743 F.2d 1307, 1310 (9th Cir. 1984); *see also Andriasian v. INS*, 180 F.3d 1033, 1046 (9th Cir. 1999) ("[W]e note that we are not contesting the [BIA's] interpretation of the governing statute . . . . Rather, our decision is based on [the BIA's] failure to apply its own construction of the statute as embodied in the applicable regulations."). The BIA's failure to follow its own regulation constitutes an abuse of discretion. *Andriasian*, 180 F.3d at 1046; *Mejia v. Ashcroft*, 298 F.3d 873, 878 (9th Cir. 2002) ("The BIA does not have the discretion to misapply the law, and it abuses its discretion when it does.").

**[14]** The streamlining regulation allows one member of the BIA to affirm without opinion, specifying that it affirms the "result" reached by the IJ, and prescribing the precise language to be used. *See* 8 C.F.R. § 1003.1(e)(4). The regulation could hardly be clearer. In pertinent part, it provides:

(4)    Affirmance without opinion.

. . . .

(ii) If the Board member determines that the decision should be affirmed without opinion, the Board shall issue an order that reads as follows: *"The Board affirms, without opinion, the result of the decision below. The decision below is, therefore, the final agency determination. See 8 CFR 1003.1(e)(4)."* An order affirming without opinion, issued under authority of this provision, shall not include further explanation or reasoning. Such an order approves the result reached in the decision below; it does not necessarily imply approval of all of the reasoning of that decision, but does signify the Board's conclusion that any errors in the decision of the immigration judge or the Service were harmless or nonmaterial.

8 C.F.R. § 1003.1(e)(4)(ii) (emphasis added).

**[15]** The first paragraph of the BIA's order in the Padillas' case recites verbatim the prescribed language. However, the second paragraph, labeled "further order," goes beyond what is authorized by the regulation. It both changes the "result" reached by the IJ and uses language that goes beyond that mandated in the regulation.

Another provision of the streamlining regulation reinforces our reading of 8 C.F.R. § 1003.1(e)(4)(ii). That provision specifies a limited number of additional orders that may be entered as part of a streamlining decision. It provides:

(e)    Case management system.

. . . .

> (2) Miscellaneous dispositions. A single
> Board member may grant an unopposed
> motion or a motion to withdraw an appeal
> pending before the Board. In addition, a
> single Board member may adjudicate a Ser-
> vice motion to remand any appeal from the
> decision of a Service officer where the Ser-
> vice requests that the matter be remanded to
> the Service for further consideration of the
> appellant's arguments or evidence raised on
> appeal; a case where remand is required
> because of a defective or missing transcript;
> and other procedural or ministerial issues as
> provided by the case management plan.

8 C.F.R. § 1003.1(e)(2). None of the "miscellaneous disposi-
tions" specified in the regulation include changing the length
of a voluntary departure period. Further, the "case manage-
ment plan" does not include any provision that would cover
the "further order" entered in this case. *See id.*; *see also* 8
C.F.R. § 1003.1(e)(5).

**[16]** We therefore hold that because the BIA issued a
streamlined order, it was required to affirm the entirety of the
IJ's decision, including the length of the voluntary departure
period. The only remaining question concerns the effect of
our holding. The voluntary departure order and the running of
the 60-day period were stayed during the pendency of the
Padillas' appeal to the BIA. *Matter of Chouliaris*, 16 I. & N.
Dec. 168 (BIA 1977) ("Timely filing of an appeal stays the
execution of the decision of the immigration judge during the
pendency of the appeal, and also tolls the running of the vol-
untary departure authorization."). Until the BIA's order was
issued, the IJ's grant of voluntary departure was still in effect
and the period had not yet begun to run.

We are not sure, however, whether the Padillas can still have the benefit of their voluntary departure order. In *Contreras-Aragon v. INS*, 852 F.2d 1088, 1097 (9th Cir. 1988) (en banc), decided before the enactment of IIRIRA, we held that, even in the absence of a stay, an alien's period of voluntary departure does not begin to run until after we issue our mandate. After the enactment of IIRIRA, we revisited the issue in *Zazueta-Carrillo v. Ashcroft*, 322 F.3d 1166, 1168 (9th Cir. 2003), and held that the voluntary departure period starts to run when the BIA issues its decision. Then in *El Himri v. Ashcroft*, 344 F.3d 1261, 1262 (9th Cir. 2003), we held that we have the equitable power to grant a stay of voluntary departure if the motion for such a stay is filed within the voluntary departure period. Finally, in *Desta v. Ashcroft*, 365 F.3d 741, 749-50 (9th Cir. 2004), we held that a motion to stay removal should be construed as including a motion to stay voluntary departure.

**[17]** We decided *Zazueta-Carrillo* (overruling *Contreras-Aragon*) well after the BIA's decision in the Padillas' case. Relying on *Contreras-Aragon*, the Padillas have never moved either to stay voluntary departure or to stay removal. In a case in which the petitioners were in a similar position to the Padillas, we held that petitioners had not exhausted their administrative remedies when they had not presented to the BIA the question whether, in light of *Contreras-Aragon*, they "should be deemed to have overstayed their period of voluntary departure." *Garcia v. Ashcroft*, 368 F.3d 1157, 1160 (9th Cir. 2004). In the circumstances of this case, we think the best course is to remand to the BIA to allow it to determine that question. We note that in two unpublished opinions the BIA has assumed that *Contreras-Aragon* applies to petitioners, like the Padillas, whose voluntary departure periods expired before we decided *Zazueta-Carrillo*. *See In re Mohammad*, 2003 WL 23508433 (BIA Nov. 18, 2003) (unpublished); *In re Zodhi*, 2003 WL 23270124 (BIA Oct. 28, 2003) (unpublished).

## Conclusion

We grant the petition for review in No. 02-73627 and remand for further proceedings with respect to voluntary departure. We deny the petition for review in No. 03-73964.