# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FILOMENA NOTARIO RIVERA,
                    *Petitioner,*

v.

MICHAEL B. MUKASEY,* Attorney
General,
                    *Respondent.*

No. 06-70028

Agency No.
A70-830-630

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 17, 2007—San Francisco, California

Filed December 7, 2007

Before: Robert R. Beezer, Stephen S. Trott, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Beezer;
Concurrence by Judge Graber

---

*Michael B. Mukasey is substituted for his predecessor, Alberto R. Gonzales, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

16121

**COUNSEL**

Alison Dixon, San Francisco, California, for the petitioner.

Charles Everett Mullens, United States Department of Justice, Washington, DC, for the respondent.

---

**OPINION**

BEEZER, Circuit Judge:

Filomena Notario Rivera ("Rivera"), a native and citizen of the Philippines, petitions for review of the Board of Immigration Appeals' ("BIA") dismissal of an immigration judge's ("IJ") denial of her application for asylum and withholding of removal. We have jurisdiction under 8 U.S.C. § 1252. The IJ's adverse credibility determination is supported by substantial evidence and the BIA properly exercised its discretion in reducing Rivera's period for voluntary departure to 30 days. We deny the petition for review.

**I**

Rivera, a former schoolteacher from Bani, the Philippines, entered the United States in June 1993 on a Visitor's Visa that authorized her to stay in the country until June 1994. After Rivera remained in the United States past that date, the Immigration and Naturalization Service issued an order to show cause, charging Rivera with deportation. Rivera filed an application for asylum and withholding of deportation, contending that she had suffered past harassment, persecution and torture at the hands of the of the New People's Army ("NPA")[1] for

---

[1]The NPA is, according to the State Department's 2001 Country Report, "the armed wing of the main Communist insurgent faction" in the Philippines.

her participation in the Filipino Civilian Voluntary Organization.

Rivera's asylum application describes a November 1992 episode in which NPA officials abducted and beat her. They kept her for several days until she agreed that she would cease providing the government with information about NPA activities. Soon after, she learned that the NPA had murdered her fiancé, a Bani police chief. Rivera fled to the United States. She briefly returned to the Philippines but, after determining that the NPA was still looking for her, came back to the United States in June 1993. Rivera averred that a return to her homeland would result in her arrest, detention, torture or death based upon her past activities and political opinion.

An IJ held a merits hearing in 1997 at which Rivera testified under oath. The IJ denied Rivera's requests for asylum and withholding of deportation. Rivera appealed that decision to the BIA. The BIA determined that Rivera's counsel had ineffectively assisted her by failing to adequately prepare her for the hearing and remanded the case to the IJ for a new hearing. In that remand order, the BIA directed the IJ to permit the parties to present additional evidence and to make an explicit credibility finding.

On remand, the IJ held another merits hearing in 2004. The IJ gave Rivera an opportunity to submit another application but she declined, opting instead to merely correct some dates on her initial application. Rivera again testified about the events and circumstances in the Philippines that led her to flee to the United States, including her abduction and her fiance's death. Her testimony differed substantially from her 1997 testimony. For example, at the 1997 hearing Rivera testified that the abductors did not identify themselves as NPA members, but at the 2004 hearing she said that the abductors had in fact identified themselves as official members of the NPA. Similarly, she said in 1997 that she was taken at gunpoint, but in 2004 she testified that her abductors did not use a firearm. Her

1997 testimony also contained contradictory statements concerning whether she was blindfolded during the abduction and whether she was held for three days or five days. In response to questioning by her new counsel, Rivera attempted to explain why her 1997 testimony had been inaccurate, stating that she was confused, scared, nervous and uncomfortable with her attorney.

The IJ determined that Rivera's testimony was not credible because of the numerous inconsistencies between her 1997 testimony and her 2004 testimony. Alternatively, the IJ found that Rivera had failed to show that she had suffered past persecution or an objective basis for a fear of future persecution. The IJ denied Rivera's claims for asylum and withholding of deportation. The IJ granted Rivera 90 days for voluntary departure. In her oral decision, the IJ stated that Rivera "has used every means of staying in the United States during the time she has been here now for approximately eight years. The Court has no greater reason to believe her today than it had to believe her when she testified in 1997."

Rivera appealed this decision to the BIA. The BIA affirmed the IJ's decision, noting the specific inconsistencies that led to the IJ's negative credibility determination. The BIA found that the IJ had not committed clear error in determining that Rivera was not credible and could therefore not meet her burden of demonstrating eligibility for asylum. The BIA also reduced the period of voluntary departure from 90 days to 30 days.

Rivera moved for reconsideration with the BIA, which denied the motion. In its order denying reconsideration, the BIA stated that it did not condone the statements made by the IJ that Rivera had "used every means of staying in the United States," but determined that neither the IJ's statements nor behavior supported a finding of bias or prejudice.

Rivera timely petitions for review of both the IJ's adverse credibility determination and the BIA's reduction of the

period of voluntary departure. Rivera does not petition for review of the BIA's denial of the motion for reconsideration.

## II

We review adverse credibility findings under the substantial evidence standard. *Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir. 2002). "The substantial evidence test is essentially a case-by case analysis requiring review of the whole record. Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Turcios v. INS*, 821 F.2d 1396, 1398 (9th Cir. 1987) (internal citation omitted). Questions of law raised in a petition for review are reviewed de novo. *Murillo-Espinoza v. INS*, 261 F.3d 771, 773 (9th Cir. 2001).

When the BIA has reviewed the IJ's decision and incorporated parts of it as its own, we treat the incorporated parts of the IJ's decision as the BIA's. *Molina-Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir. 2002).

## III

To be eligible for asylum, Rivera is required to show that she is unwilling or unable to return to her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To demonstrate a well-founded fear of persecution, Rivera must show that she subjectively fears persecution and must "offer 'credible, direct, and specific evidence in the record' to show that persecution is a reasonable possibility." *Desta v. Ashcroft*, 365 F.3d 741, 745 (9th Cir. 2004) (quoting *Singh v. Ilchert*, 63 F.3d 1501, 1506 (9th Cir. 1995)). Although the substantial evidence standard is deferential, the IJ must provide "specific, cogent reasons" for an adverse credibility finding that bear a legitimate nexus to the finding. *Zahedi v. INS*, 222 F.3d 1157, 1165 (9th Cir. 2000). "These

reasons cannot be peripheral, but rather must go to the heart of petitioner's claim." *Desta*, 365 F.3d at 745.

**[1]** After careful review of the administrative record, we find that substantial evidence supports the IJ's credibility determination. The IJ determined, and the BIA agreed, that the numerous inconsistencies between Rivera's 1997 testimony and her 2004 testimony showed a lack of credibility. Rivera repeatedly gave inconsistent testimony regarding the details of her abduction and those details go to the heart of her claim. *Desta*, 365 F.3d at 745. These inconsistencies, particularly when viewed cumulatively, deprive her claim of the requisite "ring of truth." *Kaur v. Gonzales*, 418 F.3d 1061, 1067 (9th Cir. 2005). These factual discrepancies are glaring because Rivera's entire claim centered around only two events.

**[2]** Rivera contends that it was improper for the IJ to compare her 1997 testimony to her 2004 testimony in making the credibility determination. Neither lack of attorney preparation nor lack of a translator at Rivera's 1997 hearing prevented the IJ from considering Rivera's prior testimony at the 2004 hearing because the basis of the remand did not call into question the reliability of Rivera's testimony or the reliability of the transcript. This is not a blanket rule; the reliability of earlier testimony at a subsequent hearing will depend upon the circumstances of the case. If, for example, the BIA finds that a petitioner had inadequate translation services, an IJ might be precluded from relying on earlier testimony. This is not a case of that kind and the IJ properly considered Rivera's 1997 testimony in assessing her credibility.

Rivera's argument that she was denied a reasonable opportunity to explain the perceived inconsistencies is both inaccurate and unpersuasive. The transcript of the 2004 hearing reveals numerous instances when, at the prompting of her counsel, Rivera tried to explain the numerous inconsistencies.

The IJ ultimately found these explanations insufficient. *See Singh-Kaur v. INS*, 183 F.3d 1147, 1151-53 (9th Cir. 1999).

**[3]** Because the IJ cited cogent and factually supported reasons to doubt Rivera's credibility and those reasons strike at the heart of her claim, substantial evidence supports the BIA's denial of asylum and withholding of removal.

## IV

**[4]** Rivera argues that the IJ exhibited bias in her comments during the hearing. Despite this allegation, Rivera does not properly allege a due process violation in her petition.[2] However, it is clear that the IJ's comments do not rise to the level of prejudgment or a due process violation. Rivera has not shown that "the IJ had a deep-seated favoritism or antagonism that would make fair judgment impossible." *Vargas-Hernandez v. Gonzales*, 497 F.3d 919, 926 (9th Cir. 2007). Even if Rivera had shown bias, we have held that "if the factual record adequately supports the denial of an alien's application for relief, we cannot find that the alleged bias held by the IJ was the basis for the denial of the application." *Id.* (citing *Hassan v. INS*, 927 F.2d 465, 469 (9th Cir. 1991)). The factual record here supports the IJ's adverse credibility determination. Rivera had a full and fair hearing of her case and a reasonable opportunity to present evidence on her behalf. *See Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000).

## V

Rivera contends that the BIA must grant more than 30 days for voluntary departure after the IJ had granted her 90 days.[3]

---

[2]Rivera does not allege a due process violation because of the IJ's bias. Rather, Rivera requests that her case be heard by a different IJ on remand. Because we do not remand, we do consider this claim.

[3]Although Rivera states in her brief that the IJ granted 60 days of voluntary departure, this is incorrect. The record clearly indicates that the IJ granted 90 days. Rivera also properly acknowledged this in her motion for reconsideration before the BIA.

Rivera asserts that the BIA's decision in *In re A-M-*, 23 I. &
N. Dec. 737 (B.I.A. 2005), compels the BIA to grant the same
period of voluntary departure as set by the IJ.[4]

**[5]** Under the Illegal Immigration Reform and Immigrant
Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208,
110 Stat. 3009, it is impermissible to grant voluntary depar-
ture for longer than 60 days. 8 U.S.C. § 1229c(b)(2). The IJ's
grant of 90 days of voluntary departure to Rivera was thus
statutorily impermissible and the BIA was required to correct
the IJ's legal error.

To determine whether the BIA improperly failed to con-
sider *A-M-*, it is first helpful to examine the history of the
BIA's different policy schemes for determining voluntary
departure. The BIA originally followed the general rule that
the amount of voluntary departure time originally granted by
the IJ would be reinstated after the BIA rendered its decision.
*See, e.g., In re Villegas Aguirre*, 13 I. & N. Dec. 139 (B.I.A.
1969). In *In re Chouliaris*, the BIA rejected that approach. 16
I. & N. Dec. 168, 170 (B.I.A. 1977). Expressing concern that
the voluntary departure rules were providing "a mechanism to
prolong unduly the departure of deportable aliens," the BIA
determined that "[i]n those cases in which a [voluntary depar-
ture] period exceeding 30 days has been granted, the respon-
dent will be given 30 days from the date of our decision in
which to depart voluntarily." *Id.* The BIA's decision in
*Chouliaris* "had been based on the fact that an IJ . . . was per-
mitted to grant voluntary departure periods of any length."
*Padilla-Padilla v. Gonzales*, 463 F.3d 972, 977 n.6 (9th Cir.
2006).

Congress then passed the IIRIRA, which created the statu-

---

[4]Rivera frames her claim as a due process violation. Voluntary depar-
ture is a form of discretionary relief for which there is no constitutionally
protected liberty interest. *Tovar-Landin v. Ashcroft*, 361 F.3d 1164, 1167
(9th Cir. 2004).

tory maximum of 60 days for voluntary departure. 8 U.S.C. § 1229c(b)(2). The IIRIRA largely resolved the concerns expressed in *Chouliaris*. *In re A-M-*, 23 I. & N. Dec. at 743. Following the passage of the IIRIRA, the BIA held in *A-M-* that "unless there are reasons in a particular case for reducing the period of voluntary departure initially granted in removal proceedings, we will reinstate the same period of voluntary departure, within the 60-day statutory limit, as initially granted by the [IJ]." *Id.* at 744.

**[6]** The BIA's decision in this case to grant 30 days for voluntary departure was not only necessary in light of the requirements of the IIRIRA, but permissible under *A-M-*. *A-M-*'s holding was expressly limited to cases in which the IJ granted a period of voluntary departure within a 60-day limit. *Id.* at 744. Here, the IJ granted Rivera 90 days to voluntarily depart, rendering *A-M-* inapplicable. The BIA properly followed the *Chouliaris* policy by reducing the voluntary departure period to 30 days.

Rivera has already had ample time to depart voluntarily. From the June 18, 2004 order of the IJ until she appealed to the BIA on July 19, 2004, she had time to depart. From the December 6, 2005 BIA decision until her petition for review filed with this court on January 4, 2006, she had time to depart. *See Zazueta-Carrillo v. Ashcroft*, 322 F.3d 1166, 1172-74 (9th Cir. 2003) (holding that the voluntary departure period begins when an IJ or the BIA enters an order granting voluntary departure). Rivera moved for a stay of deportation and voluntary departure when she petitioned for review of the BIA decision with the Clerk of the Court of Appeals for the Ninth Circuit. After the respondent filed a notice of non-opposition, the Deputy Clerk filed an order pursuant to Ninth Circuit General Order 6.4(c), continuing the temporary stay until "issuance of the mandate, or further order of the court." Rivera could have voluntarily departed at any time after the BIA's decision, including during the pendency of the appellate proceedings, without prejudicing her appeal. *See Mendez-*

*Alcaraz v. Gonzales*, 464 F.3d 842, 844 (9th Cir. 2006) (noting that departure from the United States does not terminate jurisdiction). She will have yet another period for voluntary departure once we issue our mandate.

The ability to delay finality over an issue such as voluntary departure illustrates an institutional failing in these asylum cases. By petitioning the Ninth Circuit for review, an undocumented alien greatly extends an illegitimate stay in the United States of America. Even in cases where the court has denied a petition on the merits, questions of voluntary departure lead to more delay. *See, e.g., Padilla-Padilla*, 463 F.3d at 982 (denying petitioner's claim on the merits, but remanding for determination whether reduction of voluntary departure period was appropriate).

It is clear that the mere filing of a petition for review no longer automatically stays the removal of an alien pending the court's decision on the petition. 8 U.S.C. § 1252(b)(3)(B); *cf.* 8 U.S.C. § 1105a(a)(3) (repealed 1996) (providing for automatic stay of deportation in most cases upon service of the petition for review). Practically speaking, however, unopposed stays are granted as a matter of course. *See* 9th Cir. Gen. Order 6.4(c) (setting forth procedures for stays of deportation or removal).[5] If the Attorney General files either a notice of non-opposition to the stay or fails to respond altogether, the automatic temporary stay is extended without consideration of the substance of the motion. *See De Leon v. INS*, 115 F.3d 643, 644 (9th Cir. 1997) (finding that the filing of a request for stay automatically stays a petitioner's removal until the court rules on the stay motion). In this practice, the Ninth Circuit is failing to undertake the appropriate analysis required by our precedent. *See Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998) ("We evaluate stay requests under the

---

[5]The same standard for obtaining a stay of removal applies to a request for a stay of voluntary departure. *El Himri v. Ashcroft*, 344 F.3d 1261, 1262 (9th Cir. 2003).

same standards employed by district courts in evaluating motions for preliminary injunctive relief."). Instead of examining the petitioner's "probability of success on the merits and the possibility of irreparable injury," or whether "serious legal questions are raised and the balance of hardships tips sharply in petitioner's favor," *id.*, we summarily fail to consider the motions, resulting in de facto grants. Whether borne out of the perceived efficiency of such summary grants or out of compassion for the petitioners, the policy may be at least partly responsible for the enormous backlog of immigration cases in our circuit. *See* EOIR, Fact Sheet: BIA Streamlining 2 (Sept. 15, 2004), http://www.usdoj.gov/eoir/press/04/BIAStreamlining2004.pdf (noting the dramatic increase in appeals of BIA decisions and recognizing that routine grants of stays create incentives for increased filings of petitions). Congress enacted the IIRIRA in part so that stays of removal and voluntary departure no longer would be automatic. It is not appropriate that, in the face of such guidance, we extend petitioners' stays any further.

Rivera's voluntary departure claim is utterly meritless. The IJ's initial grant was barred by statute and the BIA appropriately corrected it. The only case authority which Rivera relies upon is expressly inapplicable. She repeatedly misstates in her brief that the IJ granted 60 days for voluntary departure—a convenient error that, if true, would have made her argument colorable. It is unacceptable that such a claim could allow her to remain in the country for so much longer than contemplated by the BIA and by Congress.

Petition for review DENIED.

---

GRABER, Circuit Judge, specially concurring:

I concur fully in the opinion except for its final four paragraphs. Those paragraphs, in my view, encompass unnecessary dicta on issues that are not before us.