NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAY 19 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| GUILLERMO MARQUEZ-GUTIERREZ,<br><br>    Petitioner,<br><br>  v.<br><br>MERRICK B. GARLAND, Attorney<br>General,<br><br>    Respondent. | No.    19-70667<br><br>Agency No. A092-355-600<br><br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 5, 2021[**]
Seattle, Washington

Before:  BOGGS,[***] TASHIMA, and MURGUIA, Circuit Judges.

Petitioner Guillermo Marquez-Gutierrez ("Marquez"), a native and citizen of

Mexico, seeks review of a final order of removal by the Board of Immigration

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

\*\*\*      The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Appeals ("BIA") affirming an immigration judge's ("IJ") denial of his applications for cancellation of removal (available for certain permanent residents pursuant to 8 U.S.C. § 1229b(a)), asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

Marquez has amassed substantial contacts with law enforcement, immigration, and federal courts. As relevant to this case, Marquez illegally entered the United States in 1979 and adjusted his status to that of lawful permanent resident ("LPR") in 1990. In 2006, he was arrested for transporting 200 pounds of marijuana from California to Illinois, convicted in Wyoming state court of possession of a controlled substance with intent to deliver, and sentenced to imprisonment for four to seven years. As a result, Marquez was placed in removal proceedings and was ordered removed in 2008, based on his conviction of an aggravated felony relating to the trafficking of a controlled substance. 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43)(B). Marquez waived his right to appeal and was removed to Mexico.

Marquez returned to the United States at an unknown time and place. In 2014, he was charged in federal court in California with illegal reentry after removal, pursuant to 8 U.S.C. § 1326. During his § 1326 proceeding, the United States conceded that Marquez's 2006 conviction would no longer be considered an aggravated felony in light of *Moncrieffe v. Holder*, 569 U.S. 184 (2013). On March 17, 2017, the § 1326 indictment against him was dismissed. On the same day, the

Department of Homeland Security ("DHS") initiated new removal proceedings, filing a Notice to Appear ("NTA") in California charging Marquez with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. After removal hearings, an IJ ordered Marquez removed in September 2018, and the BIA affirmed the removal in March 2019. Marquez timely filed this petition for review.[1]

I

Since the BIA relied on and expressed agreement with the reasoning of the IJ, we will review the decisions of both the IJ and the BIA. *Kumar v. Holder*, 728 F.3d 993, 998 (9th Cir. 2013). Factual determinations are reviewed for substantial evidence and must be upheld unless the record compels a contrary conclusion. *Garcia-Milian v. Holder*, 755 F.3d 1026, 1031 (9th Cir. 2014). Legal questions are reviewed de novo. *Rivera v. Mukasey*, 508 F.3d 1271, 1274–75 (9th Cir. 2007).

II

---

[1]Marquez filed a motion to reopen the 2008 removal proceeding in Colorado. An IJ denied the motion as untimely, which was affirmed by the BIA in March 2018. Instead of filing a petition for review with the Tenth Circuit, Marquez instead filed a motion to reissue the denial of the motion to reopen, which would have allowed him to timely file a petition for review. The motion to reissue was denied. Marquez then filed a petition for review of the denial of his motion to reissue. His petition for review was denied by the Tenth Circuit. *Marquez-Gutierrez v. Barr*, 784 F. App'x 643 (10th Cir. 2019).

Through prior counsel, Marquez admitted the factual allegations of the 2017 NTA that he had entered the United States at an unknown place and time and was not admitted or paroled after inspection by an immigration official. He also conceded the charge of inadmissibility. Noncitizens, as a general matter, are bound by the admissions and concessions of their attorneys. *See, e.g.*, *Santiago-Rodriguez v. Holder*, 657 F.3d 820, 829 (9th Cir. 2011); *Perez-Mejia v. Holder*, 663 F.3d 403, 414 (9th Cir. 2011).

Marquez subsequently obtained new counsel, who sought to contest the charge of inadmissibility. The IJ informed counsel at two different hearings that any motion to terminate or to amend the pleadings should be filed in writing with the immigration court. Marquez did not file such a motion.

Instead, relying on his prior LPR status, Marquez moved for cancellation of removal, asylum, withholding of removal, and protection under CAT. Pursuant to 8 U.S.C. § 1229b(a), an IJ may cancel removal of a noncitizen who is inadmissible or deportable from the United States if the noncitizen: 1) has been lawfully admitted for permanent residence for not less than 5 years; 2) has resided in the United States continuously for 7 years after having been admitted in any status; and 3) has not been convicted of any aggravated felony. But, even if the applicant meets the statutory requirements of § 1229b(a), the IJ or BIA may deny an application for

cancellation if the applicant fails to demonstrate that he is deserving of relief in the ultimate exercise of discretion. *Ridore v. Holder*, 696 F.3d 907, 920 (9th Cir. 2012).

Marquez argues that he is entitled to cancellation of removal because his LPR status was restored when the district court dismissed his §1326 indictment for illegal reentry. In support, Marquez states that the Attorney General had agreed to reopen the 2008 removal proceedings when the § 1326 indictment was dismissed. However, there is no evidentiary support for such an agreement in the record and in so arguing, Marquez recognizes that an underlying removal order must first be reopened before a removal order can be invalidated. *See supra* note 1.

Both the IJ and BIA held that Marquez was not eligible for cancellation because his LPR status terminated upon entry of the final administrative order of removal in 2008. 8 C.F.R. § 1001.1(p). Relying on *Bonilla v. Lynch*, 840 F.3d 575 (9th Cir. 2016), the BIA held that a respondent does not regain LPR status unless "the BIA grants a motion to reopen, or a reviewing court holds that the BIA should have granted a motion to reopen."[2] 840 F.3d at 589. Neither happened here. *See supra* note 1.

The IJ held that even if Marquez were statutorily eligible for cancellation of removal, she would nevertheless deny Marquez's application as a matter of

---

[2] Marquez does not challenge the applicability of *Bonilla* and in fact does not even discuss or cite it in his brief.

discretion, finding him "undeserving" of cancellation of removal. The IJ cited Marquez's 2006 jury conviction of trafficking approximately 200 pounds of marijuana, his additional DUI and drug-possession criminal history disclosed in his cancellation application, and adverse inferences taken from Marquez's repeated invocation of his Fifth Amendment right against self-incrimination in responding to questions about his past criminal history. *Gutierrez v. Holder*, 662 F.3d 1083, 1091 (9th Cir. 2011).

The BIA affirmed, holding that the IJ "reasonably drew an adverse inference" from Marquez's refusal to "answer questions regarding most of his criminal history . . . ." Such refusal "hinders the assessment of the nature and seriousness of his criminal record."[3] AR at 5. The BIA additionally noted "at least one relatively recent conviction in 2016 that also involves a controlled substance violation that calls into question whether the respondent has been genuinely rehabilitated." *Ibid*. Substantial evidence exists to uphold the findings of the IJ and BIA that Marquez is "undeserving" of cancellation of removal. Nothing in the record compels a contrary conclusion. Even assuming he somehow regained his LPR status, Marquez has

---

[3] The BIA recognized some equities in Marquez's favor such as family ties and support, employment, entry into United States at young age, procurement of a GED and attendance at Alcoholic and Narcotic Anonymous while in jail, lack of incidents while incarcerated and detained, and taking out trash and doing laundry while in ICE detention.

failed to demonstrate that he warrants such relief as a matter of discretion. We affirm the denial of cancellation of removal.

III

Marquez also applied for asylum, withholding of removal, and protection under CAT. Marquez's asylum application was not filed within one year after his last arrival in the United States and the IJ held he did not qualify for an exception to the one-year filing requirement. 8 C.F.R. § 1208.4(a)(4)–(5). Further, the IJ held that even if he qualified for an exception, Marquez was ineligible for asylum, withholding of removal, and protection under CAT because he had been convicted of a particularly serious crime that constitutes a danger to the community. 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii). The legal standard to determine if a crime is particularly serious is set forth in *Matter of Frentescu*, 18 I. & N. Dec. 244 (BIA 1982), and is determined on a case-by-case basis by looking at the nature of the conviction, the circumstances and underlying facts of the crime, the type of sentence imposed, and whether the type and circumstances of the crime indicate the convicted immigrant will be a danger to the community. *Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1077 (9th Cir. 2015).

We review a finding that an offense constitutes a particularly serious crime for an abuse of discretion. *Ibid*. Our review is limited to ensuring that the IJ and the BIA relied on the appropriate factors and proper evidence to reach this conclusion.

*Ibid.*; *Anaya-Ortiz v. Holder*, 594 F.3d 673, 676 (9th Cir. 2010). We may not reweigh the evidence and reach our own determination about the crime's seriousness. *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014).

The IJ concluded that Marquez's 2006 conviction for trafficking 200 pounds of marijuana, while not an aggravated-felony drug offense as defined in *Moncrieffe*, qualified as a particularly serious crime under *Frentescu*. 18 I. & N Dec. at 247. The IJ held that the amount of marijuana involved in Marquez's crime was "staggering" and would lead to distribution of marijuana "across broad swaths of the American landscape." AR at 81. Marquez was involved in a large-scale drug trafficking operation worth hundreds of thousands of dollars for which he received a lengthy sentence of four to seven years, reflecting the severity of his crime and that his actions were a danger to the community.

The BIA adopted and affirmed the IJ's holding. The BIA specifically weighed the equities in Marquez's favor (s*ee supra* note 3) and concluded that they did not mitigate the seriousness of his transporting 200 pounds of marijuana. The IJ and BIA relied on the appropriate factors and proper evidence to reach the conclusion that Marquez had committed a particularly serious crime, and thus the denial of his applications for asylum, withholding of removal, and protection under CAT was not an abuse of discretion.

IV

While having committed a particularly serious crime makes Marquez ineligible for protection under CAT, he remains eligible for deferral of removal under CAT. 8 C.F.R. §§ 1208.16(d)(2), 1208.17. To qualify, Marquez must demonstrate that it is more likely than not that he would be tortured if removed to Mexico, and that any torture that he might face would be inflicted by or at the instigation of or with the consent or acquiescence of the Mexican government. *Kamalthas v. INS*, 251 F.3d 1279, 1282 (9th Cir. 2001).

Marquez claims fear of torture because he was the victim of several crimes in Mexico after his removal in 2008: 1) individuals broke into his house and robbed him, which he verbally reported to the police but without effect; 2) the police often stopped Marquez because of his association with a known criminal; 3) men in civilian clothes, who Marquez thought were police, came to his house and extorted him for money and jewelry; and 4) individuals forcibly entered his house looking for someone else and stabbed Marquez in the leg, arm, and shoulder, injuries that he treated with a first-aid kit. Marquez also claimed he would be targeted as a returning deportee, and that the police would not protect him.

The IJ found that based on the evidence presented, Marquez had not established a likelihood of torture or that any torture would be by or with the acquiescence of the Mexican government. The BIA affirmed on grounds that Marquez "has not identified record evidence demonstrating how each step in his

9

hypothetical chain of events is more likely than not to happen, more so that the entire chain of events would come together to result in the clear probability that he will be tortured in Mexico . . . ." AR at 07. On review, Marquez has presented no evidence that would compel a contrary conclusion.

We deny the petition for review.