# In re A-M-, Respondent

*Decided May 9, 2005*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Absent specific reasons for reducing the period of voluntary departure initially granted by the Immigration Judge at the conclusion of removal proceedings, the Board of Immigration Appeals will reinstate the same period of time for voluntary departure afforded to the alien by the Immigration Judge. *Matter of Chouliaris*, 16 I&N Dec. 168 (BIA 1977), modified.

(2) The respondent, whose asylum application was not filed within a year of his arrival in the United States, failed to demonstrate his eligibility for an exception to the filing deadline or for any other relief based on his claim of persecution in Indonesia, but the 60-day period of voluntary departure granted to him by the Immigration Judge was reinstated.

FOR RESPONDENT: David Gruen, Esquire, Brooklyn, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY: Brian J. Kennedy, Assistant Chief Counsel

BEFORE: Board Panel: HOLMES, Acting Vice Chairman; HURWITZ and MILLER, Board Members.

HOLMES, Acting Vice Chairman:

In a decision dated July 7, 2003, an Immigration Judge denied the respondent's applications for asylum and for withholding of removal under both section 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3) (2000), and Article 3 of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture" or "Convention"). The Immigration Judge also granted the respondent 60 days in which to voluntarily depart the United States, with an alternative order of removal to Indonesia. The respondent has appealed the Immigration Judge's denial of his applications for asylum and withholding of removal and, alternatively, requests that we reinstate the 60-day voluntary departure period. The respondent's appeal as to asylum and withholding of removal will be dismissed, and the 60-day period for voluntary departure will be reinstated.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The respondent is a native and citizen of Indonesia who entered the United States on January 22, 2001, as a nonimmigrant visitor. The record reflects that he filed an application for asylum on March 15, 2003. He was placed in removal proceedings in April 2003 for remaining in the United States beyond the time permitted. In his hearing before the Immigration Judge, the respondent conceded that he was removable as charged, but again applied for asylum and withholding of removal.

## II. ASYLUM

An applicant for asylum who fails to file an asylum application within 1 year of arrival in the United States must demonstrate either "changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." Section 208(a)(2)(D) of the Act, 8 U.S.C. § 1158(a)(2)(D) (2000); *see also* section 208(a)(2)(B) of the Act; 8 C.F.R. §§ 208.4(a)(2), (4), (5), 1208.4(a)(2), (4), (5) (2004). There is no dispute that the respondent failed to file his asylum application within 1 year of arrival in the United States. The Immigration Judge found that he failed to demonstrate that he met either the "changed circumstances" or the "extraordinary circumstances" exception to the 1-year filing deadline. Section 208(a)(2)(D) of the Act. On appeal, the respondent argues that the Immigration Judge erred in finding that he failed to demonstrate changed country conditions justifying the late filing.[1] *See* 8 C.F.R. § 1208.4(a)(4)(i)(A) (including changes in conditions in the applicant's country within the meaning of "changed circumstances").

The respondent submits that the nightclub bombing in Bali, Indonesia, on October 12, 2002, is a material change in country conditions that led to the filing of his asylum application after the 1-year deadline. The Bali nightclub bombing was undoubtedly a tragic event for nearly all Indonesians. The respondent, however, has failed to demonstrate how this event materially affected or advanced his asylum claim. *See* 8 C.F.R. § 1208.4(a)(4)(i) (referring to "circumstances materially affecting the applicant's eligibility for asylum").

The respondent's claim is based on his Chinese ethnicity and Christian faith. He lived, and his family continues to live, in Surabaya on the island of Java. The native population of the island of Bali is nearly 90% Hindu and most of the victims of the Bali nightclub bombing were foreign tourists. *See*

---

[1] On appeal, the respondent has not raised the "extraordinary circumstances" exception to the 1-year filing deadline. We agree with the Immigration Judge's finding that the facts of this case are not within the scope of the "extraordinary circumstances" exception. *See* 8 C.F.R. § 1208.4(a)(5) (defining the term "extraordinary circumstances").

Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, *Indonesia Country Reports on Human Rights Practices - 2002* 2 (Mar. 31, 2003), *available at* http://www.state.gov/g/drl/rls/hrrpt/2002/18245.htm ("*Country Reports*"). When considered in the context of his asylum claim, the respondent has failed to demonstrate that either the Bali incident or other recent developments have materially affected his eligibility for asylum. Moreover, when asked at the hearing why he waited over 2 years after his arrival to apply for asylum, the respondent answered: "To . . . pay my debt in Indonesia." We therefore agree with the Immigration Judge's conclusion that the respondent has not demonstrated that he met the changed circumstances exception to the 1-year filing deadline.[2]

## III. WITHHOLDING OF REMOVAL UNDER THE ACT

Although the respondent is ineligible for asylum, he may qualify for withholding of removal to Indonesia if he demonstrates that his "life or freedom would be threatened in that country" on account of one of the protected grounds under the Act. Section 241(b)(3)(A) of the Act. If an applicant for withholding of removal is found to have suffered past persecution in the proposed country of removal on account of a protected ground, it is presumed that his life or freedom would be threatened in the future in the country of removal on the basis of the original claim. 8 C.F.R. § 1208.16(b)(1) (2004). An applicant who has not suffered past persecution may demonstrate that his life or freedom would be threatened in a country if he can establish that it is more likely than not that he would be persecuted in that country on account of a protected ground. 8 C.F.R. § 1208.16(b)(2).

In regard to past persecution, the respondent testified that he was subjected to harassment and discrimination based on his Chinese ethnicity and Christian religion since he was a young child. He described harassment by "ethnic" Indonesian children, including name-calling and extortion of money. He explained that, as an adult, he was charged higher fees than were normal for some applications and services. He also referred to a problem in 1996 when persons he identified as "ethnic" Indonesians threw rocks that shattered glass he was transporting on the street. The respondent did not indicate that he suffered any physical injury in this incident. The most recent event occurred in May 1998 when "ethnic" Indonesians looted the respondent's store.

The respondent's testimony provided little detail regarding the May 1998 looting incident. He did not mention this incident during his direct examination. When his own counsel probed as to whether there were

---

[2] Alternatively, the Immigration Judge found that the respondent failed to demonstrate either past persecution or a well-founded fear of persecution, as required to qualify for asylum. As we agree with the Immigration Judge that the respondent is ineligible to apply for asylum under the 1-year filing requirement, we do not address the merits of the asylum claim.

additional incidents on which he based his claim, the respondent indicated that once, in 1996, he was mocked by ethnic Indonesians who were demanding money from him and that he was sometimes charged excessive fees for documents. When respondent's counsel asked why he stopped working at his business in 1998, the respondent answered, "The economic situation, the dollar value declined and the economic crisis." Respondent's counsel then specifically asked: "[D]uring 1998, were there any problems which happened at your business other than just a general economic slowdown," to which the respondent replied, "Nothing else." During follow-up questioning by the Immigration Judge, the respondent testified that he had once been hospitalized for 2 days after a cut from broken glass that occurred in 1998 when his shop was looted. The respondent did not refer to any other physical injuries he has suffered and did not explain the extent of the financial loss resulting from this incident.

We agree with the Immigration Judge that the respondent failed to demonstrate that he met the threshold level of harm for past persecution.[3] The May 1998 store-looting incident and the other instances of harassment or discrimination do not rise to the level of harm sufficient to demonstrate past persecution. *See, e.g.*, *Hoxha v. Ashcroft*, 319 F.3d 1179 (9th Cir. 2003) (finding that harassment, threats, and one beating did not constitute persecution). We therefore affirm the Immigration Judge's ultimate finding that the respondent failed to demonstrate past persecution.

An applicant for withholding of removal who has not suffered past persecution may nevertheless qualify for relief if he demonstrates that his life or freedom would be threatened in the future in the country of removal. 8 C.F.R. § 1208.16(b)(2). The threat to life or freedom requirement may be met by showing either (1) that he would likely be singled out individually for persecution on account of a protected ground if returned to the country of removal, or (2) that there is a pattern or practice of persecution of a group of persons similarly situated to him on account of a protected ground and that he is included in, or identified with, the persecuted group such that it is more likely than not that his life or freedom would be threatened if he returned. *Id.*

In assessing the likelihood of future threats to the respondent, we find it significant that he remained in Indonesia for over 2 years after his store was looted in 1998, and he described no additional incidents in which he was harassed or persecuted during that time. In addition, the respondent's spouse, also of Chinese ethnicity and Christian religion, and their three teenage children have remained in Surabaya, Indonesia, during the respondent's stay in the United States without any reported incidents of persecution.[4] *See Lie*

---

[3] In evaluating the question of threshold level of harm for past persecution, we accept the credibility of the respondent's testimony concerning his experiences in Indonesia.

[4] The respondent testified that his wife and one of his children were victims of attempted

(continued...)

*v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005) (finding that a claim to fear of future persecution in Indonesia based on Chinese ethnicity and Christian religion was diminished when family members remained behind and did not experience persecution). Although the respondent has experienced harassment and discrimination based on ethnicity and religion, and such problems continue to exist in Indonesia, he has not demonstrated that he would likely be singled out individually for persecution were he to be returned to Indonesia.

The respondent asserts that there is a pattern or practice of persecution in Indonesia against Chinese Christians and that he would be identified with this group. We do not find, however, on the record before us, that the threat of harm to Chinese Christians in Indonesia by the Government, or by forces that the Government is unable or unwilling to control, is so systemic or pervasive as to amount to a pattern or practice of persecution. *See Lie v. Ashcroft*, *supra*, at 537 (stating that "'pattern or practice'" means persecution of a group that is "'systemic, pervasive, or organized'" (quoting *Ngure v. Ashcroft*, 367 F.3d 975, 991 (8th Cir. 2004))).[5]

At his hearing the respondent submitted a number of articles that report on incidents of religious and ethnic clashes in Indonesia over the last several years. The most recent country conditions evidence, however, as reflected in the 2002 State Department Country Report, indicates that incidents of harm related to religious or ethnic strife generally involved fellow citizens rather than the Government or Government agents, and that Government acquiescence is not the norm. *See Country Reports*, *supra*, sec. 2.c, at 14, (stating that "[p]olice and soldiers occasionally tolerated illegal actions against religious groups by private parties," but otherwise indicating governmental support for religious freedom and tolerance); *see also Lie v. Ashcroft*, *supra*, at 537 (noting that in order to be considered persecution, harm must be "'committed by the government or forces the government is either "unable or unwilling" to control'" (quoting *Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003))).

The same report states that the Indonesian Government "officially promotes racial and ethnic tolerance." *Country Reports*, *supra*, sec. 5.c, at 24. Although the 2002 report refers to "instances of discrimination and harassment" against ethnic Chinese, it does not describe persecution so systemic or pervasive as to amount to a pattern or practice of persecution. *See*

---

[4] (...continued)
robberies, but he provided insufficient detail or supporting evidence from which it could be inferred that these incidents were motivated by a protected ground under the Act.

[5] In *Sael v. Ashcroft*, 386 F.3d 922, 929 (9th Cir. 2004), the United States Court of Appeals for the Ninth Circuit found no evidence of a "pattern or practice" of persecution of Chinese Christians in Indonesia, but applied a lower level of individualized fear of persecution based on a finding that Chinese Christians were a "disfavored group."

*also Lie v. Ashcroft*, *supra*, at 537 (relying on the 1999 Country Reports to find that violence against Chinese Christians in Indonesia declined after 1998 and was not so widespread as to amount to a pattern or practice of persecution). For these reasons we find that the respondent has not demonstrated that he would likely be persecuted based on a pattern or practice of persecution of Chinese Christians in Indonesia. We therefore agree with the Immigration Judge's finding that the respondent failed to demonstrate that he meets the requirements for withholding of removal under section 241(b)(3) of the Act.

## IV. CONVENTION AGAINST TORTURE

In order to qualify for withholding of removal under the Convention Against Torture, the respondent must demonstrate that if returned to Indonesia, he would likely be subjected to harm amounting to torture within the meaning of the Convention and that such harm would be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1) (2004). The respondent did not establish that he would likely be subjected to harm amounting to torture under the Convention. Nor did his notice of appeal or appellate brief identify any factual or legal error in the Immigration Judge's denial of withholding of removal. We therefore agree with the Immigration Judge's conclusion that the respondent failed to demonstrate that he meets the requirements for withholding of removal under the Convention Against Torture.

## V. VOLUNTARY DEPARTURE

At the conclusion of removal proceedings, the Immigration Judge granted the respondent 60 days in which to voluntarily depart the United States, i.e., until September 5, 2003.[6] The respondent requests that we reinstate the Immigration Judge's grant of 60 days in which to voluntarily depart in the event that we dismiss his appeal. We requested supplemental briefing from the parties on the appropriate period of voluntary departure.[7]

Our long-standing rule, since *Matter of Chouliaris*, 16 I&N Dec. 168 (BIA 1977), has been to limit our grant of voluntary departure to 30 days when the Immigration Judge initially grants a longer period of time. When we decided

---

[6] The Immigration Judge's order of July 7, 2003, states that voluntary departure is granted until August 6, 2003. Given the clear statement in the transcript and in the Immigration Judge's decision that voluntary departure would be granted until September 5, 2003, we attribute the reference to August 6, 2003, to a clerical error.

[7] We acknowledge with appreciation both the supplemental brief provided by the Department of Homeland Security ("DHS") on this issue and the brief filed by the respondent on the issues presented in this appeal.

*Chouliaris,* however, there was no statutory or regulatory limit on the time for voluntary departure. Consequently, Immigration Judges sometimes granted lengthy periods of time in which to voluntarily depart. In *Chouliaris*, for example, the Immigration Judge granted the respondent 5 months in which to voluntarily depart because he had married a lawful permanent resident and was awaiting approval of a pending visa petition that would have made him potentially eligible for adjustment of status. *Id.* at 169. While his appeal was pending before us, however, the visa petition was withdrawn. There was therefore no longer any reason to reinstate the initial period of voluntary departure afforded by the Immigration Judge. As we recognized in *Chouliaris*, "The particular purpose for a lengthy grant may be fulfilled while the case is before us on appeal, or it may no longer exist." *Id.* at 170. We therefore modified our earlier practice, which had been to reinstate the same period of voluntary departure granted by the Immigration Judge, and replaced it with the rule that we would limit our grant of voluntary departure to 30 days.

The statutory framework for voluntary departure has significantly changed since our decision in *Matter of Chouliaris*. In 1996, the Immigration and Nationality Act was amended to limit the grant of voluntary departure afforded at the conclusion of removal proceedings to 60 days. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, § 304(a)(3), 110 Stat. 3009-546, 3009-597; *see also* section 240B(b)(2) of the Act, 8 U.S.C. § 1229c(b)(2) (2000). The concern expressed in *Matter of Chouliaris* regarding prolonged periods of voluntary departure has been largely resolved by this statutory ceiling on the period for voluntary departure. We will therefore address the question of the appropriate period of voluntary departure to be granted by the Board of Immigration Appeals in removal proceedings when the Immigration Judge has granted a specified period in which to voluntarily depart.

We begin by emphasizing that the recent statutory and regulatory changes have not altered the basic principle established in *Matter of Chouliaris*, *supra*, that the timely filing of an appeal with the Board stays the execution of the decision of the Immigration Judge during the pendency of the appeal and tolls the running of the time authorized by the Immigration Judge for voluntary departure. *See* section 101(a)(47)(B)(i) of the Act, 8 U.S.C. § 1101(a)(47)(B)(i) (2000) (stating that an order of deportation becomes "final" upon a determination of the Board affirming such order); section 240B(b)(1) of the Act (authorizing voluntary departure at the conclusion of a removal proceeding). The implementing regulation confirms that in the event the respondent files a timely appeal with the Board, "the order [of the Immigration Judge] shall become final upon an order of removal by the Board or the Attorney General, or upon overstay of any voluntary departure period granted or reinstated by the Board or the Attorney General." 8 C.F.R.

§ 1241.1(f) (2004). The filing of an appeal with the Board automatically stays execution of the Immigration Judge's order. 8 C.F.R. § 1003.6(a) (2004). These provisions assure that the respondent's decision whether to appeal an Immigration Judge's decision will not be adversely affected by the potential loss of the opportunity to voluntarily depart in the event of an unsuccessful appeal.[8]

When the Immigration Judge grants voluntary departure and specifies a departure period such as 30 days, we lack jurisdiction to consider an appeal of the length of voluntary departure granted by an Immigration Judge. 8 C.F.R. §1003.1(b)(3) (2004). Conversely, we find no requirement or convincing reason, under the current statutory and regulatory provisions, for a blanket rule reducing the time period for voluntary departure to 30 days when an Immigration Judge has granted 60 days in which to voluntarily depart. Rather, unless there are reasons in a particular case for reducing the period of voluntary departure initially granted in removal proceedings, we will reinstate the same period of voluntary departure, within the 60-day statutory limit, as initially granted by the Immigration Judge.[9] We will therefore reinstate the 60 days of voluntary departure afforded by the Immigration Judge.

**ORDER:** The respondent's appeal of the denial of his applications for asylum and withholding of removal is dismissed.

---

[8] The posting of a voluntary departure bond is a statutory condition precedent to ensure that an alien departs within the time afforded. *See* section 240B(b)(3) of the Act. The implementing regulation directs the filing of a minimum bond of $500 within 5 days of the Immigration Judge's order granting voluntary departure and specifies that failure to timely post a voluntary departure bond results in the automatic vacation of the grant of voluntary departure. 8 C.F.R. § 1240.26(c)(3) (2004). As the statutorily required bond must be posted within 5 days of the Immigration Judge's order, this condition is not tolled by the filing of a notice of appeal with the Board.

The DHS acknowledges that the respondent has posted the mandatory voluntary departure bond and has complied with all other conditions set by the Immigration Judge as a condition of voluntary departure. As the issue is not before us in this case, we do not address the suggestion by the DHS in its brief that respondents should be required to submit evidence on appeal showing that the voluntary departure bond was posted and that other conditions of voluntary departure have been met before the Board orders reinstatement of the period of voluntary departure afforded by an Immigration Judge.

[9] The DHS suggests in its brief that we should rely on *Matter of Villegas Aguirre*, 13 I&N Dec. 139 (BIA 1969), to hold that, assuming a properly filed appeal in removal proceedings, the voluntary departure period granted by the Immigration Judge is tolled (i.e., does not begin to run) until issuance of the Board's decision resolving the alien's appeal. As discussed above, when we exercise our authority in removal proceedings to reinstate voluntary departure granted by an Immigration Judge, we will reinstate the same period of voluntary departure, within the 60-day statutory ceiling, as afforded by the Immigration Judge.

**FURTHER ORDER:** Pursuant to the Immigration Judge's order and conditioned upon compliance with conditions set forth by the Immigration Judge and the statute, the respondent is permitted to voluntarily depart from the United States, without expense to the Government, within 60 days from the date of this order or any extension beyond that time as may be granted by the district director. *See* section 240B(b) of the Immigration and Nationality Act; 8 C.F.R. §§ 1240.26(c), (f) (2004). In the event the respondent fails to so depart, the respondent shall be removed as provided in the Immigration Judge's order.

**NOTICE:** If the respondent fails to depart the United States within the time period specified, or any extensions granted by the district director, the respondent shall be subject to a civil penalty of not less than $1,000 and not more than $5,000, and shall be ineligible for a period of 10 years for any further relief under section 240B and sections 240A, 245, 248, and 249 of the Act, 8 U.S.C. §§ 1229b, 1255, 1258, 1259 (2000). *See* section 240B(d) of the Act.