06-0396-ag
Mufied v. Mukasey

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2007

(Argued: August 29, 2007                    Decided: November 20, 2007)

Docket No. 06-0396-ag

————————————————————————————

REZA ABDUL MUFIED,

*Petitioner*,

—v.—

MICHAEL B. MUKASEY, United States Attorney General,[*] MICHAEL CHERTOFF, Secretary of the
U.S. Department of Homeland Security, JULIE MYERS, Assistant Secretary of the U.S.
Department of Homeland Security, JOHN P. TORRES, Acting Director of Detention and Removal
Office, Immigration and Customs Enforcement, MICHAEL FICKE, Special Agent-in-Charge of the
New York Field Office of Immigration and Customs Enforcement, United States Department of
Justice, U.S. Department of Homeland Security,

*Respondents*.

————————————————————————————

B e f o r e : JACOBS, *Chief Judge*, KATZMANN, and HALL, *Circuit Judges*.

————————

Appeal from a judgment of the Board of Immigration Appeals affirming the decision of
the Immigration Judge to deny the petitioner withholding of removal under the Immigration and

_____

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B.
Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as the
respondent in this case.

Nationality Act. Because the Board considered only whether the petitioner had established that he would be singled out for persecution and did not consider the petitioner's claim that there is a pattern or practice of persecution of Christians in Indonesia, we **GRANT** the petition for review and **REMAND** for further proceedings.

_____

Counsel for Defendant-Appellant: LAWRENCE SPIVAK, New York, NY.

Counsel for Appellee: JOHN BATTAGLIA, United States Department of Justice, Washington, DC (Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, Kaarina Salovaara and Craig A. Oswald, Assistant United States Attorneys, *on the brief)*.

_____

KATZMANN, *Circuit Judge*:

Petitioner Reza Abdul Mufied petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming the decision of Immigration Judge ("IJ") Joanna Miller Bukszpan to deny his application for withholding of removal under the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3). *See In re Mufied*, No. A 96 423 965 (B.I.A. Dec. 28, 2005) ("BIA Decision"), *aff'g* No. A 96 423 965 (Immig. Ct. N.Y. City Aug. 26, 2004) ("IJ Decision"). Mufied based his application for relief, in part, on his claim that Christians in Indonesia faced a pattern or practice of persecution, but neither the IJ nor the BIA considered this claim. We remand to the BIA so that it may do so in the first instance. On remand, we encourage the BIA to elaborate upon the "systemic, pervasive, or organized" standard it has applied to analyzing such claims.

I.

Mufied is a native and citizen of Indonesia, having lived most recently on Sulawesi

island.  He is Christian, but unlike most of the Indonesian Christian asylum applicants who seek relief in our Court, he is not ethnically Chinese.  His asylum application lists his ethnicity as "Manadois."  Mufied was admitted to the United States in 2001 as a non-immigrant visitor with authorization to remain in the country for a period not to exceed six months.  He remained longer than authorized and was placed in removal proceedings in 2003.  Once in proceedings, Mufied conceded removability and applied for asylum and withholding of removal under the Immigration and Nationality Act.[1]

The IJ granted the government's motion to pretermit Mufied's asylum claim and denied his other applications for relief.  With respect to his application for withholding of removal, the IJ assumed that Mufied was a Christian but found that "he has not shown that the country conditions are such that it is more likely than not that he would be persecuted as a Christian in Indonesia."  IJ Decision at 6.  The IJ addressed both Mufied's testimony regarding his personal experience in Indonesia and the background materials regarding "difficulties between Muslims and Christians" and "terrorist attacks across the country from time to time."  *Id.*  Yet she appears to have considered each only for its value in predicting the likelihood that Mufied would be singled out for persecution if forced to return to his native country.  Thus, she explained that "random terrorist violence does not lead to a finding that it is more likely than not that this particular person will be persecuted on account of his religion if he were forced to return to Indonesia."  *Id.*  And, focusing again on petitioner individually, she did not find that "the acts

---

[1] Mufied also applied for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85.  The IJ denied this relief and Mufied failed to appeal this denial to the BIA.  He concedes that we may not review this issue.

that did or did not happen to [Mufied] in the past rise to the level of any kind of assumption that he, rather than any other Christian, would have a problem in Indonesia." *Id.* at 7. Accordingly, the IJ concluded, Mufied had not met his burden of proof and his application for withholding of removal was denied.

Mufied appealed to the BIA. In his brief to the Board, he pressed two separate bases for withholding of removal. First, he claimed that the "threats and acts of violence suffered by the respondent on account of his Christian faith equate to persecution on account of religion" and that "such persecution can and will happen again to the respondent." Joint Appendix at 18. Second, he argued more broadly that he had "much to fear in the way of persecution on account of religion simply because he is a Christian from Indonesia." *Id.* at 19. This second ground was based not on any claim of individualized treatment, but rather "[t]he existence of a pattern and practice of persecution against Christians in Indonesia." *Id.* at 21.

The BIA adopted and affirmed the decision of the IJ in a *per curiam* order. The Board first agreed that Mufied's asylum application was untimely. Then, turning to his application for withholding of removal, the BIA further agreed that "the respondent did not meet his burden of proof and persuasion to establish past persecution or a clear probability of persecution or torture were he returned to Indonesia." BIA Decision at 1. The Board cited the State Department's 2003 Country Report on Human Rights Practices for Indonesia as "indicat[ing] that inter-religious tolerance and cooperation improved during the year following a drop in violence" and found that "[t]he respondent experienced few problems." *Id.* Accordingly, the BIA concluded that he had not "met the stringent standard of a clear probability of persecution." *Id.*

-4-

II.

When the BIA adopts the decision of the IJ and supplements the IJ's decision or emphasizes particular aspects of it, we review the IJ's decision as supplemented by the BIA as the final agency determination. *See Dong Gao v. BIA*, 482 F.3d 122, 125-26 (2d Cir. 2007). Administrative findings of fact in immigration cases are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Accordingly, a reviewing court "defer[s] to the factual findings of the BIA and the IJ if they are supported by substantial evidence." *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 333-34 (2d Cir. 2006) (internal quotation marks omitted). Legal conclusions and the application of legal principles to undisputed facts are reviewed *de novo*. *See Yi Long Yang v. Gonzales,* 478 F.3d 133, 141 (2d Cir. 2007); *Ibragimov v. Gonzales*, 476 F.3d 125, 132 (2d Cir. 2007).

To qualify for withholding of removal, an applicant must demonstrate that her "life or freedom would be threatened in [the] country [of removal]" on the basis of one of five statutory grounds, "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see also* 8 C.F.R. § 208.16(b); *Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 339 (2d Cir. 2006). Where the applicant establishes that she has "suffered past persecution" on the basis of one such statutory ground, eligibility for withholding of removal is presumed, subject to rebuttal. 8 C.F.R. § 208.16(b)(1); *Serafimovich v. Ashcroft*, 456 F.3d 81, 85 (2d Cir. 2006). If the applicant did not suffer past persecution, or if the fear of future threat to life or freedom is unrelated to the past persecution that she suffered, the applicant must establish "that it is more likely than not" that "she would be persecuted" in the future on account of a protected ground. 8 C.F.R. § 208.16(b)(2); *Ivanishvili*, 433 F.3d at 339. Such a showing does

not require "evidence that [the applicant] would be singled out individually for such persecution" if

> (i) The applicant establishes that in that country there is a pattern or practice of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and

> (ii) The applicant establishes his or her own inclusion in and identification with such group of persons such that it is more likely than not that his or her life or freedom would be threatened upon return to that country.

8 C.F.R. § 208.16(b)(2).

Neither the IJ nor the BIA appears to have considered Mufied's claim that there is a pattern or practice of persecution of Christians in Indonesia.[2] The IJ clearly based her decision on Mufied's failure to establish that he would be singled out for persecution. While she did consider the country conditions as described in the background materials, she did so only to inquire whether they would "lead to a finding that it is more likely than not that *this particular person* will be persecuted." IJ Decision at 6 (emphasis added). We decline the government's invitation to assume that the IJ made findings on the existence of a pattern or practice *sub silentio* merely because she considered evidence relevant to that question for another purpose. Nor did the BIA supplement the IJ's decision in this regard. Indeed, it also appeared to base its denial of Mufied's appeal on its finding that he had personally "experienced few problems."

Ordinarily, when a disputed issue "requires determining the facts and deciding whether the facts as found fall within a statutory term," we apply what the Supreme Court has called the "ordinary remand rule." *Gonzales v. Thomas*, 547 U.S. 183, 186-87 (2006) (internal quotation

---

[2] The IJ assumed, *arguendo*, that Mufied was a Christian.

-6-

marks omitted). "A court of appeals is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (internal quotation marks omitted). Accordingly, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Id.* (internal quotation marks omitted). Such circumstances may be present when "the BIA [has] decided the scope of the statutory term in a fact context sufficiently analogous to [that] presented [in the petition for review] that we can rule . . . with assured confidence" on the issue. *Ucelo-Gomez v. Gonzales*, 464 F.3d 163, 170 (2d Cir. 2006).

Arguably, the BIA's opinion in *In re A–M–*, 23 I. & N. Dec. 737 (B.I.A. 2005), could provide us with a basis to resolve this petition. In that case, the BIA could "not find, . . . on the record before [it], that the threat of harm to Chinese Christians in Indonesia by the Government, or by forces that the Government is unable or unwilling to control, is so systemic or pervasive as to amount to a pattern or practice of persecution." *Id.* at 741. In unpublished orders, we have relied on this decision to deny petitions for review brought by other Chinese Christians from Indonesia. *See, e.g.*, *Harry v. Gonzales*, No. 06-4850-ag, 2007 WL 2541434 (2d Cir. Sept. 4, 2007).

In this case, however, we decline to address Mufied's pattern or practice claim in the first instance for several reasons. First, the factual issue considered by the BIA in *In re A–M–* (i.e., whether Chinese Christians are persecuted) may be slightly different from that presented by this case (whether Christians of other ethnicities are persecuted), and Mufied relies on more recent reports and evidence. *See In re A–M–*, 23 I. & N. Dec. at 741 (discussing the analysis in a 2002 report by the State Department of "instances of discrimination and harassment against ethnic

Chinese" (internal quotation marks omitted)). Because the BIA did not address Mufied's claim, we cannot know whether, even assuming Manadois Christians are treated similarly to Chinese Christians, it would view his evidence as sufficient to establish a relevant, material change in conditions in Indonesia. This task is especially difficult in light of our uncertainty regarding the parameters of the relevant standard.

Second the BIA's analysis in *In re A–M–* does not provide us sufficient guidance for how to evaluate a pattern or practice claim. The BIA rejected the claim in that case because it could not find that the alleged persecution was "so systemic or pervasive as to amount to a pattern or practice of persecution." *Id.* at 741. It then cited an opinion by the Court of Appeals for the Third Circuit for the proposition that "'pattern or practice' means persecution of a group that is 'systemic, pervasive, or organized.'" *Id.* (quoting *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005) (internal quotation marks omitted)). We afford "substantial deference" to the BIA's interpretations of its own regulations, *Joaquin-Porras v. Gonzales*, 435 F.3d 172, 178 (2d Cir. 2006), and this standard, which has been adopted by several other courts of appeals,[3] appears to be a reasonable one. Yet while the BIA's bare articulation of the standard is "not unhelpful, . . . it is general and its application does not reliably control particular instances." *See Ucelo-Gomez,*

---

[3] In addition to the Third Circuit, this standard has been adopted by the Seventh Circuit, *see Ahmed v. Gonzales*, 467 F.3d 669, 675 (7th Cir. 2006) ("[A petitioner] must show a systematic, pervasive, or organized effort to kill, imprison, or severely injure members of the protected group, and this effort must be perpetrated or tolerated by state actors." (internal quotation marks omitted)), the Eighth Circuit, *see Wijono v. Gonzales*, 439 F.3d 868, 874 (8th Cir. 2006) ("To constitute a 'pattern or practice,' the persecution of the group must be 'systemic, pervasive, or organized.'" (quoting *Ngure v. Ashcroft*, 367 F.3d 975, 991 (8th Cir. 2004)), and the Tenth Circuit, *see Woldemeskel v. INS*, 257 F.3d 1185, 1191 (10th Cir. 2001) (adopting a definition of "pattern or practice of persecution" as "'something on the order of systematic or pervasive persecution'" (quoting *Makonnen v. INS*, 44 F.3d 1378, 1383 (8th Cir. 1995)).

464 F.3d at 171 (explaining that when the BIA's interpretation of a certain statutory term, here "particular social group," is general, it can lead to a "wellspring of differing . . . interpretations by different courts of appeals"). Without further elaboration, we are unsure how systemic, pervasive, or organized persecution must be before the Board would recognize it as a pattern or practice. *Cf. SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947) (noting that a court cannot "be expected to chisel that which must be precise from what the agency has left vague and indecisive"). Indeed, we are unsure even as to what indices the Board had in mind to guide us in assessing whether persecution is systemic, pervasive, or organized at all.

Third, the nature of the claim at issue makes this case "an especially attractive candidate for remand." *Yuanliang Liu v. U.S. Dep't of Justice*, 455 F.3d 106, 116 (2d Cir. 2006). The potential costs of a wrong decision on a pattern or practice claim are considerable because "once the court finds that a group was subject to a pattern or practice of persecution, every member of the group is eligible for [relief]." *Ahmed v. Gonzales*, 467 F.3d 669, 675 (7th Cir. 2006). The granting of a single claim could bring on "an avalanche of asylum-seekers." *Mitreva v. Gonzales*, 417 F.3d 761, 765 (7th Cir. 2005). Yet the consequences of an erroneous denial of a pattern or practice claim are obviously grave as well; such a decision would foreclose the possibility of relief to anyone in a targeted group who is unable to produce proof that she would be singled out for mistreatment. As we have previously noted,

> [w]here so much can be lost—and especially in an area of law in which, even in the ordinary case, a lot is at stake—it is imperative that claims be adjudicated in a fair and reasoned way. Standardless and *ad hoc* decisionmaking by federal courts or by individual immigration judges is especially to be avoided with respect to [such issues].

*Yuanliang Liu*, 455 F.3d at 117 (internal citation omitted).

For these reasons, we conclude that the better course is for us to remand this petition to the BIA rather than attempt to adjudicate Mufied's claim ourselves. *See Ucelo-Gomez*, 464 F.3d at 172 (explaining that a general definition of a statutory term "is a start, but insufficient to meet the purposes of appellate review"); *see also Yuanliang Liu*, 455 F.3d at 116 (concluding, "as a matter of discretion, that it is prudent and useful for us to remand the issue" at hand, regardless of whether such a remand would be "required by elementary principles of administrative law" (emphasis omitted)). We are hopeful that the Board will take this opportunity to elaborate upon the "systemic, pervasive, or organized" standard it has adopted and provide sufficient detail to guide both immigration judges and courts of appeals as they apply it to new factual contexts.

III.

For the foregoing reasons, we **GRANT** the petition for review, **VACATE** the BIA's order, and **REMAND** to the BIA for proceedings consistent with this opinion.