

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-7-2008

# Susanto v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2153

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Susanto v. Atty Gen USA" (2008). *2008 Decisions.* Paper 896.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/896

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-2153

_____

FNU SUSANTO,
                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A 96-203-863)
Immigration Judge:  Honorable Charles M. Honeyman

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 2, 2008

Before: AMBRO, FISHER and JORDAN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 7, 2008)

_____

OPINION

_____

PER CURIAM

        Susanto petitions for review of an order of the Board of Immigration Appeals

("BIA") affirming the Immigration Judge's ("IJ") final order of removal.  For the reasons

that follow, we will deny his petition.

Susanto is a native and citizen of Indonesia and identifies himself as ethnic Chinese. He was born a Buddhist and was baptized a Christian after his arrival in the United States. He entered the United States as a non-immigrant visitor on August 20, 2001 and overstayed his visa. He was issued a Notice to Appear on May 13, 2003, and on September 17, 2003, when appearing before the IJ, applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

The IJ denied all relief save Susanto's request for voluntary departure, holding that his asylum application was time-barred and that he could not satisfy the standard for withholding of removal or CAT relief. The BIA adopted and affirmed the IJ's decision with some modification and dismissed the appeal. Through counsel, Susanto filed a petition for review. The Government opposes the petition.

We have jurisdiction over this petition for review under 8 U.S.C. § 1252. We review de novo Susanto's claim that the BIA violated his right to due process. See Abdulrahman v. Ashcroft, 330 F.3d 587, 595-96 (3d Cir. 2003). We review the BIA's factual findings for "substantial evidence." See Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001). Under this standard, we will uphold these findings unless the evidence not only supports a contrary conclusion, but compels it. See id.

In his petition for review, Susanto challenges the IJ's denial of withholding of

2

removal and CAT relief.[1]  To be entitled to withholding of removal to a specific country, an applicant must demonstrate a clear probability that his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3); Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003).  An applicant can do so either by proving past persecution, which creates a rebuttable presumption of future persecution, or by demonstrating a well-founded fear of future persecution.  See 8 C.F.R. § 1208.16(b).  In the event that the applicant cannot demonstrate past persecution or a likelihood of future individualized persecution, he may still be eligible for withholding of removal by demonstrating "that in that country there is a pattern or practice of persecution of a group of persons similarly situated to the applicant" on account of a protected ground.  See 8 C.F.R. § 1208.16(b)(2)(i).  For relief under the CAT, an applicant must demonstrate that it is more likely than not that he would be tortured if removed to his country of origin "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."  See 8 C.F.R. § 208.16(c)(2).

   In support of his application, Susanto testified that he was born a Buddhist, but in 2000 he began to attend services at an Indonesian Christian Church in Cimara.  (A.R. 94-95.)  He was baptized a Christian after his arrival in the United States.  (A.R. 111.)  In

---

[1]Because Susanto does not raise any argument regarding the BIA's determination that his asylum claim is time-barred, any such claims he might have raised are deemed waived.  See Voci v. Gonzales, 409 F.3d 607, 609 n.1 (3d Cir. 2005).

March or April of 2001, he twice accompanied some of his neighbors to their mosque at their request, after which they began asking him to go more often. (A.R. 95.) When he declined, he claims that they became "not so nice to [him] and "used their religion to press hard on [him]." (A.R. 94.) He testified that they wanted him to convert to Islam, but he believed that if he did, he would be forced to join some type of jihad organization and commit acts of violence. (A.R. 98.)

Upon further questioning as to what he meant by his neighbors "pressing hard on him," Susanto explained that they were "very impolite" and threatened him by asking "Do you want to live long in this country, or do you want us to kill you?". (A.R. 108.) He stated that he didn't report their actions to the police due to the difficulty of proving his accusations. (A.R. 108.) He then added that in addition to threatening his life, his neighbors "threw stones, a big stone, at [his] house" and put some stones into the gasoline tank of his motorcycle. (A.R. 109.) When asked why he didn't include in his asylum application any of this information regarding being threatened or having stones thrown at his house and put in his motorcycle, he stated: "I felt the major part was their purpose to get me into the Muslim group and to jihad group, but about their families and about how they threw stones, how they put the stones into gasoline tank, are minor part. I felt it was okay that they threw stones at my house. They put some stones into gasoline tanks, it was okay with me, but the most, the most thing that concern me is they want to get me into jihad group." (A.R. 109.)

4

When asked about his ability to remain in his family home for six months after these incidents began, he testified that he tried to avoid his neighbors, always went directly home and was afraid to go out.[2] (A.R. 99-100.) He testified that he and his wife tried to sell their house so they could relocate, but that some of the "jihad groups" tried to scare off the potential buyers by telling them that area was unsafe. (A.R. 102.) He stated that his neighbors "still threaten [his] wife" and tell her that "if [he] comes back to Indonesia, they would finish [him]." (A.R. 103-104.) In response to a query from the IJ as to why he didn't get a letter from his wife to corroborate his testimony regarding the continued threats in his absence, Susanto stated that he didn't understand that a letter from his wife could be used to support his case. (A.R. 104.)

While the IJ did not explicitly make an adverse credibility determination, he did find that the omission of certain details from Susanto's asylum application and initial testimony, in addition to the lack of corroboration, raised some credibility issues. He found that Susanto failed to meet his burden of establishing past persecution or a likelihood of future persecution based on his reliance on translations of documents without providing the original foreign language versions, his failure to provide a letter or affidavit from his wife describing the events which occurred after Susanto's departure from Indonesia, and his failure to include the corroborating details to which he testified in

---

[2]In his brief, Susanto claims that he did relocate to two different cities during this time. (Pet. Br. 27.) However, neither the record cites offered by petitioner nor an independent review of the transcript bears this out.

5

his original affidavit.  The IJ further concluded that the case law in this Circuit is that there is no pattern and practice of persecution of ethnic Chinese Christians in Indonesia, see Lie v. Ashcroft, 396 F.3d 530, 537-38 (3d Cir. 2005); In re A-M, 23 I. & N. Dec. 737, 741 (BIA 2005).  Finally, the IJ held that Susanto had not shown that he is more than likely to be tortured upon his return to Indonesia, and therefore was not entitled to relief under the CAT.

The BIA adopted and affirmed the IJ's decision with certain modifications.  The BIA held that Susanto failed to demonstrate that he was subject to past persecution during the six months prior to his departure for the United States, as he was able to work and reside in his home without being harmed, and he offered no indication that he had reported these threats or sought police protection after receiving them.  Because he was therefore not entitled to a presumption of future persecution, the BIA went on to consider whether he had demonstrated such a likelihood.  The BIA held that his testimony and written asylum statements regarding this claim lacked sufficient specificity to satisfy the higher standard required to demonstrate an entitlement to withholding of removal, and concluded that it was reasonable for the IJ to have expected Susanto to obtain an affidavit from his wife corroborating his claim that his neighbors have continued to threaten him during the past five years while he has been in the United States.  With respect to his pattern and practice claim, the BIA clarified that while a petitioner could offer evidence that was not before this Court in Lie to demonstrate that there is currently a pattern and

6

practice of persecuting ethnic Chinese Christians in Indonesia, the evidence submitted by Susanto failed to do so.

In his petition for review, Susanto first argues that the BIA failed to conduct an individualized determination of his interests in violation of his right to due process. However, Susanto merely cites case law in support of the proposition that he is entitled to such a determination and fails to state with any specificity the shortcomings of the BIA's opinion. A review of the BIA's opinion reveals that it clearly considered Susanto's testimony and submissions, as well as his arguments on appeal regarding the IJ's decision. Accordingly, we conclude that this claim is without merit. See Abdulai v. Ashcroft, 239 F.3d 542, 550 (3d Cir. 2001) (BIA decision must provide "sufficient indicia" that an individualized determination has been made).

Next Susanto claims that he has demonstrated both past persecution and a likelihood of future persecution and that the BIA therefore erred in denying his claim for withholding of removal. He claims that he received multiple death threats over a six month period "on account of his refusal to convert to Islam and his political opposition to the mosques terrorist *jihadi* group" and that this demonstrates past persecution. (Pet. Br. 17.) However, Susanto failed to identify this "jihadi group" with any specificity or to offer any evidence that the government was unable or unwilling to control it. Throughout his testimony, he simply referred to his alleged persecutors as "friends," "neighbors," or "they." He argues that the BIA failed to make a finding as to why a corroborating

affidavit from Susanto's wife was necessary as required by our case law. See Voci v. Gonzales, 409 F.3d 607, 616-17 (3d Cir. 2005). However, the BIA clearly considered this issue, "agree[ing] with the Immigration Judge's assessment that it would be reasonable to expect him to at least attempt to secure a letter from his wife corroborating and detailing the claimed threats against his life since his departure 5 years ago, particularly given that she alone is the source of this information." (A.R. 3.) He maintains that the BIA overlooked the evidence he submitted in support of his claim that there is a pattern and practice of discrimination against Chinese Christians in Indonesia. However, a review of the BIA's opinion belies this assertion. Finally, he claims that he "has established a clear probability that he will be subject to conduct amounting to torture in Indonesia with the acquiescence of Indonesian public officials." (Pet. Br. 29.) He describes this as "a general and continuous threat of physical attacks from his Muslim extremist neighbors, Muslim society in general, and the Indonesian government." (Id.) As the Government correctly argues, Susanto did not testify, nor does he point to any evidence in the record, that he would be tortured with the consent or acquiescence of the Indonesian government upon his return. See Shehu v. Attorney General, 482 F.3d 652, 658 (3d Cir. 2007).

Susanto is unable to demonstrate that the evidence compels a conclusion contrary to that reached by the BIA. See Abdille, 242 F.3d at 483-84. Accordingly, we will deny the petition for review.

8