10-5260-ag
Kandaswamy v. Holder

BIA
Vomacka, IJ
A092 013 447

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 9th day of March, two thousand twelve.

PRESENT:
            DENNIS JACOBS,
                    *Chief Judge,*
            PETER W. HALL,
            GERARD E. LYNCH,
                    *Circuit Judges.*

_____

SUNTHER KANDASWAMY,
        *Petitioner,*

                v.                                      10-5260-ag
                                                        NAC
ERIC H. HOLDER, JR., UNITED STATES
ATTORNEY GENERAL,
        *Respondent.*

_____

FOR PETITIONER:        Visuvanathan Rudrakumaran, New York, New York.

FOR RESPONDENT:        Tony West, Assistant Attorney General; Daniel E. Goldman, Senior Litigation Counsel; Lindsay Corliss,

**Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C.**

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED.

Sunther Kandaswamy, a native and citizen of Sri Lanka, seeks review of a November 30, 2010, decision of the BIA affirming the July 7, 2009, decision of Immigration Judge ("IJ") Alan Vomacka, which denied his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Sunther Kandaswamy,* No. A092 013 447 (B.I.A. Nov. 30, 2010), *aff'g* No. A092 013 447 (Immig. Ct. N.Y. City July 7, 2009). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed the entire IJ decision. *See Ming Xia Chen v. BIA*, 435 F.3d 141, 144 (2d Cir. 2006). The applicable standards of review are well-established. *See* 8 U.S.C. § 1252(b)(4)(B); *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

## I. Asylum

Title 8, Section 1158(a)(3) of the United States Code provides that no court shall have jurisdiction to review the agency's finding that an asylum application was untimely under 8 U.S.C. § 1158(a)(2)(B), or a finding that no change or extraordinary circumstance excuses the untimeliness under 8 U.S.C. § 1158(a)(2)(D). We nevertheless retain jurisdiction to review constitutional claims and "questions of law." 8 U.S.C. § 1252(a)(2)(D).

Kandaswamy argues first that, as a matter of law, the agency failed to make an explicit finding as to an excuse for untimeliness. However, a review of the IJ's decision shows that he did in fact determine that Kandaswamy had not demonstrated extraordinary or changed circumstances.

Kandaswamy argues that, in any event, any such finding was in error. Because the IJ mischaracterized the record, and because both the IJ and the BIA relied on that mischaracterization in determining that Kandaswamy failed to show changed circumstances sufficient to excuse the one year filing deadline, the agency erred as a matter of law. *See Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 329 (2d Cir. 2006); *see also Mendez v. Holder*, 566 F.3d 316, 323 (2d

Cir. 2009).

The IJ noted in his decision that "the Tamil conflict has been going on in Sri Lanka for approximately 25 to 30 years" and "[n]othing has changed"; and the BIA agreed with that finding in affirming the IJ's decision to pretermit Kandaswamy's asylum application. The statement that nothing has changed in Sri Lanka in the past decades seriously misstates the record. Country condition evidence indicates: that there was a cease-fire between the government and the LTTE in 2002, which began to break down in 2006 and was formally dissolved in January 2008; and that disappearances of ethnic Tamils by the government, and government-sponsored paramilitary groups, has "increased dramatically" since 2006. This error affected the agency's decision regarding changed circumstances sufficient to excuse the one year deadline for filing an asylum application. *See Tian-Yong Chen v. I.N.S.*, 359 F.3d 121, 127 (2d Cir. 2004). Moreover, remand to the agency to correct its error would not be futile, because it is not clear that the agency would adhere to its prior decision to pretermit Kandaswamy's asylum application if it were to assess the record accurately. *See Xiao Ji Chen*, 471 F.3d at 338.

4

**II. Withholding of Removal**

    **A. Individual Likelihood of Persecution**

Kandaswamy claims that he will be persecuted in Sri Lanka because the government will assume that a Tamil who lived abroad supports the LTTE, or, alternatively, that he will be persecuted as an unsuccessful asylum seeker. However, as the IJ observed, there is no evidence in the record that the Sri Lanka government is persecuting Tamils returning from abroad, or asylum seekers. *See Jian Xing Huang v. INS*, 421 F.3d 125, 128-29 (2d Cir. 2005). Kandaswamy also did not establish that the government would be aware that he sought and did not receive asylum. *See Hongsheng Leng v. Mukasey*, 528 F.3d 135, 143 (2d Cir. 2008). Accordingly, the IJ did not err in finding that Kandaswamy failed to establish that he would be persecuted upon return to Sri Lanka.

    **B. Pattern or Practice**

An applicant for withholding of removal may establish eligibility for that relief by showing either that he will be persecuted in the future, or that "there is a pattern or practice of persecution of a group of persons similarly situated to the applicant" on account of a protected ground, and he is included in that group. 8 C.F.R. § 1208.16(b)(2);

5

*see Mufied v. Mukasey*, 508 F.3d 88, 91 (2d Cir. 2007).
Kandaswamy also argues that he established a pattern or practice of persecution of Tamils by the Sri Lankan government and by paramilitary groups. The IJ concluded that the record showed no more than "isolated incidents" of individuals considered to be "part of a terrorist organization" being "arrested, detained, and beaten." As evidence that there was no pattern or practice of persecution of Tamils in Sri Lanka, the IJ observed that the State Department had not granted temporary protected status to Tamils in the United States. The BIA concurred with the IJ's findings.

The agency's conclusion is undermined by problems with its fact-finding process, as it does not indicate what evidence it relied upon in determining that there were only isolated incidents of arrests, detentions and beatings: moreover, it mischaracterizes the record regarding the treatment of Tamils in Sri Lanka. *See Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 405 (2d Cir. 2005)(remanding where the agency "mischaracterized the record"); *cf. Santoso v. Holder*, 580 F.3d 110, 112 (2d Cir. 2009) (holding that where the agency's determination that an individual did not establish a pattern or practice of persecution is supported

6

by background materials, the agency has provided a "sufficient basis" for its conclusion).

There is documentary evidence which the agency may credit (or not) that suggests a high level of violence against ethnic Tamil civilians at the hands of the Sri Lankan government, government-supported paramilitary groups, and other actors. A letter from members of the United States Congress to Ambassador Rice states that "ethnic-based violence is widespread in Sri Lanka, and Tamil noncombatants are deliberately victimized by Sri Lankan Government policies." A 2008 Human Rights Watch report states that "[h]undreds of enforced disappearances committed since 2006 have already placed Sri Lanka among the countries with the highest number of new cases in the world. The victims are primarily young ethnic Tamil men who 'disappear'– often after being picked up by government security forces in the country's embattled north and east, but also in the capital Colombo." A 2008 report from the UNHCR states that "Tamils in Colombo . . . are at heightened risk of security checks, arbitrary personal and house to house searches, harassment, restrictions on freedom of movement, and other forms of abuse" and "in relation to individuals who flee targeted violence or human right abuses by the authorities or

paramilitary groups, there is no internal flight alternative."

Finally, the designation of temporary protected status is not required for finding a pattern or practice of persecution. *Compare* 8 U.S.C. § 1254a(b)(1) (defining designation of temporary protected status) *with* 8 C.F.R. § 1208.16(b)(2)(i) (defining "pattern or practice") *and Matter of Acosta*, 19 I. & N. Dec. 211, 222 (BIA 1985) (defining persecution), *overruled, in part, on other grounds*, *by INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987).

For the foregoing reasons, the petition for review is GRANTED, and the case is remanded to the agency for further proceedings. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34.1(b).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk